## Lee v. Commonwealth.

(Decided May 6, 1924.)

### Appeal from Fulton Circuit Court.

1. Homicide—Conviction of Voluntary Manslaughter Sustained by Evidence.—Conviction of voluntary manslaughter held sustained by evidence.

2. Homicide—Manslaughter Instruction Held Proper.—In prosecution for killing man paying attentions to defendant's daughter, where self-defense was relied on, held that it was proper to give manslaughter instruction.

3.  Criminal Law—No New Trial for Cumulative Newly Discovered Evidence.—New trial will not be granted for newly discovered evidence merely cumulative.

4.  Criminal Law—Defendant, Not Having Read Affidavit to Jury, Cannot Claim that Court Erred in Not Continuing for Absent Testimony.—Defendant, not having read or offered to read as deposition affidavit for continuance containing testimony that would be given by absent witness, cannot complain that court erred in forcing him to trial in absence of such witness.

5.  Witnesses—Commonwealth Properly Permitted to Contradict Testimony of own Witness when Surprised.—Court did not err in permitting Commonwealth to contradict testimony of defendant's daughter introduced by Commonwealth, by previous statements made by her when under oath before grand jury and in examining trial of defendant, that no improper relations existed between her and deceased, where she testified to contrary on trial when placed on stand by Commonwealth in rebuttal, thereby surprising the Commonwealth.

6.  Homicide—Facts of Wrongful Intimacy Admissible, Though Not Communicated to Defendant.—In support of plea of self-defense, facts tending to establish wrongful intimacy between deceased and close relative of defendant need not have been communicated to him to render evidence thereof competent.

7.  Homicide—Proper for Commonwealth to Show no Improper Relationship Between Deceased and Defendant's Daughter.—Where defendant relied on self-defense, and attempted to prove improper relations between his daughter and deceased, it was proper for Commonwealth on rebuttal to show by daughter that no improper relationship existed.

8.  Homicide—Exclusion of Evidence Held Not Prejudicial.—It was not prejudicial error to exclude testimony that intimacy between defendant's daughter and deceased was communicated to defendant, where witnesses testified in detail to intimacy, and jury found defendant guilty of manslaughter.

9.  Criminal Law—Exclusion of Evidence Not Error, where Jury Subsequently Instructed to Consider it as Competent.—There was no error because court, after witness testified, admonished jury that testimony was not competent, where the court subsequently withdrew such ruling and told jury that such evidence should be considered as competent.

10.  Homicide—Instruction on Voluntary Manslaughter, Not Requiring Killing Without Previous Malice, Favorable to Defendant.—An instruction on voluntary manslaughter was more favorable to defendant than it should have been where it did not require that killing be done "without previous malice."

ED. THOMAS and H. T. SMITH for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER:—
Affirming.

At the September term, 1923, of the Fulton circuit court, appellant, W. M. Lee, was indicted charged with the crime of murder. He was tried at the following January term of the court and the jury found him guilty of voluntary manslaughter and fixed his punishment at confinement in the state penitentiary for a term of eleven years. At the same term of court, motion and grounds for a new trial were duly filed by appellant and overruled by the court. The appellant prosecutes this appeal, asking a reversal upon the several grounds set forth in his motion and grounds for a new trial.

The consideration of the reasons urged why the judgment should be reversed makes it necessary to briefly summarize the facts introduced upon the trial of the case below. The appellant had been divorced from his wife, Patty Lee, some two years before the homicide. Their daughter, Lovie Lee, about sixteen years of age, lived with her mother. Ed. Seay was the proprietor of a dry goods store in Fulton, Kentucky, and Lovie Lee had been employed by him as a clerk for several months before the homicide. Seay was a married man and he and his wife and Patty Lee and her daughter, Lovie, appear to have been very friendly. For some months prior to the homicide, the appellant, as he testified, observed that Seay was paying too much attention to his daughter, Lovie Lee, and he believed that Seay's attentions were for the purpose of accomplishing her downfall. He testified that on two occasions, the first a few months and the second a few weeks before the homicide, he talked with Seay and urged him to desist from his attentions to the girl because of the notoriety it was giving her. He testified that on both of those occasions Seay made no response to him but rather laughed in his face and left him.

The homicide occurred on June 26, 1923. Late in the afternoon of that day, Seay and his wife and Mrs. Patty Lee and Lovie had been riding in an automobile together. At supper time they returned to the boarding house where Mr. and Mrs. Seay were living. They had decided that after supper the four of them would drive again, and Seay and his wife left the machine at their boarding house and Mrs. Lee and Lovie, the latter driving the car, drove on to their home. They were to return later for Seay and his wife to resume the drive. About

seven or seven-thirty o'clock, and between sundown and dark, Mrs. Lee and her daughter returned for the Seays. Lovie was driving and Mrs. Lee occupied the rear seat of the car. Seay and his wife and Mrs. Ryan, the proprietress of the boarding house, and another lady and gentleman, were seated on the front porch at the boarding house. When the car drove up the Seays arose and Mrs. Seay went immediately to the car while he went to his room for his coat. He returned immediately with his coat over his arm and walked out to the car. When Seay was within a few steps of the car, Lovie Lee looking up the street remarked, "Here comes papa." Seay then got into the car, taking the seat beside Lovie Lee; the motor was started and the car put into motion. Just at this time appellant had reached a point opposite to and within a few feet of the car and, calling out, "Stop the car," he stepped from the sidewalk, either on to the running board of the car or in the street within a foot or two of same, and fired three shots at Ed. Seay, all of which took effect and from which Seay died immediately.

Appellant testified for himself that he had no intention of harming Seay when he called "Stop the car" and turned in its direction; that he merely had in mind having further conversation with the deceased in the presence of his wife and the mother of appellant's daughter, hoping thereby to bring about a cessation of the attentions that Seay was paying to the daughter. He further testified that when he said "Stop the car" Seay immediately reached his right hand into the pocket of the coat he was carrying on his arm as if to draw a pistol; that he believed Seay was about to draw a pistol and shoot him, and that he shot solely to defend himself from the impending attack at the hands of Seay. He admitted, however, that Seay did not draw the pistol or get any portion of it from under the coat; that he did not see a pistol and that he acted solely from the demonstration that Seay made by reaching into the pocket of the coat.

The court permitted a wide range of testimony on the subject of the attentions of the deceased to the daughter of appellant, permitting appellant to testify as to all he had seen, and a number of witnesses to testify as to these matters. However, when all this testimony is reduced to a final analysis, it appears that Seay had on a number of occasions taken Lovie Lee riding with him in his automobile, but that on all these occasions, with the exception of two, Lovie Lee's mother and Ed. Seay's wife were

present. The visits of Ed. Seay to the home of the daughter, Lovie Lee, were without exception shown to have occurred when her mother was present and in almost every instance Ed. Seay's wife accompanied him. Mrs. Ed. Seay, a witness for the Commonwealth, testified that when appellant got even with the car at the time the tragedy occurred, just before springing from the walk on to the running-board of the car, appellant said, "Stop there, you d— s— of a b—, I have got you now." However, all the other eye-witnesses to the tragedy who testified, including appellant himself, said that his words were "Stop the car." The shooting was done with a 38 calibre Smith & Wesson pistol. One shot took effect in the right forearm, the point of entry and exit being about half way between the wrist and elbow; another shot entered below the right nipple and ranged down and came out about six inches below the left nipple; another shot entered the right lumbar region and came out at the left side to the left and slightly above the nipple. Mrs. Seay, Mrs. Laura Ryan, Charlie Hamlett and A. I. Martin, eye-witnesses, testified for the Commonwealth, and all stated that Seay made no demonstration that they saw indicating that he was about to draw a gun or use any violence toward appellant before the shooting; all of them admitting, however, with the exception of Mrs. Seay, that they were not very well placed to see and some that they could not see just what deceased was doing at the time he was shot. It was shown beyond question that Seay had an automatic pistol in the pocket of the coat he carried on his left arm when he went to the car. The evidence is conflicting as to who had the coat when the shooting occurred. Mrs. Seay testified that when her husband reached the car before the shooting he pitched the coat into her lap and that she had it when the shooting occurred. Appellant testified that Seay had it on his arm. The coat with the pistol still in the pocket was found in the car after the tragedy and after the occupants of the car had left it at the home of the doctor to which they had driven with deceased after the tragedy.

With this brief statement of the facts, we will take up the contentions raised by the appellant in his motion and grounds for a new trial, and in the brief of his counsel filed herein, as to why a reversal of the judgment should be granted. The chief reason assigned by appellant for a reversal of the judgment herein, as his claims are presented by his attorney by brief, is that the verdict

of the jury is not sustained by the evidence. The greater portion of the brief is devoted to an argument of this question. From the statement of the facts, given above, we cannot concur with appellant in this contention. The testimony for the Commonwealth all conduced to show that the appellant shot and killed Seay without any legal cause and without having been placed in any danger of losing his life or suffering great bodily harm at his hands. The testimony for the appellant was that he killed deceased in self-defense, but he is not corroborated by any witness who took the stand for him. The mitigating circumstances that the deceased, a married man, was paying unusual and perhaps improper attentions to the daughter of appellant were permitted to go to the jury. Under this state of facts we cannot hold that the verdict of the jury was palpably against the weight of the evidence. On the other hand, a careful reading of the record in this case has left with the court the impression that the appellant was dealt with very leniently by the jury that tried him.

The appellant also contends that the court erred in submitting an instruction on manslaughter. His contention is that, from the facts proved in the case, in killing Seay, he either committed the crime of murder or was justified upon the grounds of self-defense; and that the court should have confined the jury to a consideration of whether the homicide constituted the crime of murder or was excusable upon the grounds of self-defense and apparent necessity. We are impressed that if the court below had failed to give the manslaughter instruction and the jury had found defendant guilty of murder, appellant would be here with real cause for complaint that the court erred to his prejudice in not giving a manslaughter instruction.

This court has uniformly held in cases involving similar facts to these, whether the defense be insanity or self-defense, that it is proper to give the manslaughter instruction. See Massie v. Commonwealth, 29 S. W. 871, 16 Ky. L. R. 790; Stott v. Commonwealth, 29 S. W. 141, 17 Ky. L. R. 308; Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 30 Rep. 904, 10 L. R. A. (N. S.) 335; Shepherd v. Commonwealth, 119 Ky. 931, 85 S. W. 191, 27 R. 376.

The appellant contends that the court below erred in overruling his motion for a new trial on the grounds of newly discovered testimony. The alleged newly dis-

covered testimony, as disclosed by the affidavits, relates to the relationship between deceased Seay and Lovie Lee, the daughter of appellant, and if true would merely go to show it to have been improper. The evidence would have been merely cumulative, and this court has uniformly held that a new trial will not be granted for evidence merely cumulative. Powell v. Commonwealth, 149 Ky. 415, 149 S. W. 889; May v. Commonwealth, 153 Ky. 141, 154 S. W. 1074; Jones v. Commonwealth, 158 Ky. 533, 165 S. W. 673.

Appellant contends that the court erred in forcing him into trial in the absence of his witness, John Bond. An affidavit for continuance was filed and the testimony as to what Bond would state was set forth in full therein. The record in the case does not disclose that appellant either read or offered to read the statement as Bond's deposition; hence, we cannot conclude, since appellant himself did not think enough of the testimony of this witness to read his deposition, that the court below erred in forcing appellant into trial in the absence of this witness.

Appellant complains of the action of the trial court in permitting the Commonwealth to contradict the testimony of the witness, Lovie Lee, introduced by the Commonwealth, by previous statements made by her when under oath before the grand jury and in the examining trial of the appellant, Lee. We assume that the trial court permitted the evidence of all the acts and relationships between deceased and Lovie Lee, the daughter of appellant, in support of appellant's plea of self-defense, and under the rule that such evidence like uncommunicated threats shows the state of mind of deceased toward the accused and thereby renders more probable the claim that the deceased was the aggressor. The leading case upholding such evidence is the very recent one of Blackerby v. Commonwealth, 200 Ky. 832. When introduced in support of a plea of self-defense, under this rule, the facts tending to establish wrongful intimacy between deceased and a close relative of the defendant need not have been communicated to him to render such testimony competent. In rebuttal then the Commonwealth introduced as a witness the daughter, Lovie Lee, to establish that no improper conduct had ever been indulged in toward her by deceased and that no improper relationship had existed betwen them. While before the grand jury this witness, Lovie Lee, had testified, without qualification, that no improper relationship had ever existed between her

and the deceased and that no improper proposal was ever made or improper word ever spoken to her by deceased. She had testified to the same effect in Lee's examining trial. In a conversation had with the Commonwealth's attorney and other attorneys in the case for the Commonwealth, shortly before being introduced as a witness, Lovie Lee had stated likewise that no improper proposal or act was ever said or done to her by the deceased Seay. While testifying in rebuttal for the Commonwealth, however, she testified that on one occasion while taking an automobile drive deceased attempted to put his arms around her, but that she would not let him; and that on one occasion not long before the homicide deceased proposed to her that she go to St. Louis and live with him, and that she refused to do so, and that he then said, "I will get you some time and you will go."

When taken thus by surprise by this testimony, the Commonwealth contradicted the witness by introducing the stenographer who had taken the evidence before the grand jury and at the examining trial and members of the grand jury and one of the attorneys who interviewed this witness before she was introduced and proving her former statements.

We hold it was proper for the Commonwealth to show by this witness that no improper relationship had existed between her and deceased and that he had never made any improper proposals to her, this going to rebut the testimony that was admitted to show the state of mind of the deceased toward appellant. When taken by surprise by the witness, as was the case here, we conclude that it was proper for the Commonwealth to contradict her, though she was introduced by the Commonwealth, by proving other statements made by her different to those testified to.

Appellant complains that the court below erred to his prejudice in refusing to permit to go to the jury the testimony of several witnesses offered by him that they had communicated to appellant prior to the shooting the acts and conduct of the deceased Seay and Lovie Lee which tended to show that their relationship was improper. All such acts and conduct as had come under their observation were permitted to be detailed to the jury by these witnesses. Appellant himself testified that he had seen and had been told enough to believe that deceased was seeking to ruin his daughter. The jury found appellant guilty of manslaughter. The testimony offered and re-

jected was competent in this case only as tending to show appellant's state of mind to be considered by the jury as to whether the homicide was from his malice .aforethought or in his sudden heat and passion. As the jury found a manslaughter verdict we cannot hold that the rejection of this testimony was prejudicial.

Appellant complains of the action of the trial court in excluding from the jury the testimony of M. R. Newbill. The record discloses that at the conclusion of Newbill's testimony, the court admonished the jury that it was not competent for any purpose. We find, however, that immediately following the testimony of the witness, Mrs. J. W. Lovier, on page 146 of the transcript, the former ruling of the court with reference to Newbill's testimony was withdrawn and the court then instructed the jury that the evidence given by the witness, Newbill, should be considered as competent evidence on behalf of defendant.

The record in this case is large and has been carefully read and considered. Such inconsequential errors as were committed cannot be held to have prejudiced any of appellant's substantial rights. The instructions given were more favorable to the appellant than they should have been. For instance, the instruction on voluntary manslaughter did not require the jury to believe that the shooting and.killing was done by appellant "without previous malice." The instruction on self-defense did not in very apt language require the jury to believe that the danger, real or reasonably apparent to the appellant, existed when he shot deceased.

Upon the whole case, we are convinced that none of appellant's substantial rights were prejudiced and the judgment of the lower court is affirmed.