## Phelps v. Commonwealth.

(Decided May 29, 1925.)

### Appeal from Marshall Circuit Court.

1. Statutes—Doctrine of "Ejusdem Generis" is Only a Rule of Construction to Aid in Ascertaining Legislative Intent.—Doctrine of "ejusdem generis" in construction of a statute that when any general words follow an enumeration of particular things or objects set out therein, general words will be construed as applicable only to persons or things of same general nature or class as those enumerated is only a rule of construction to aid in ascertaining legislative intent, and does not control where it clearly appears from statute as a whole that no such limitation was intended, or where specific words of statute describe subjects which differ greatly from one another, or where specific words embrace all objects of their class so that general words must bear a different meaning from specific words or be meaningless.

2. Statutes—Legislative Intent to Give Effect to General Words Different from Specific Words will be Given Effect by Courts.—If

context of a statute discloses a legislative intention to give an effect to general words different from specific words, courts will carry into effect such intention.

3. Conspiracy—Statute Held to Include Conspiracy to Break and Enter a Storehouse with Intention of Stealing Therefrom.—Ky. Stats., 1241a-1 denouncing conspiracies to do certain specific acts "or to do any felonious act" held to include a conspiracy to break and enter a storehouse with intention of stealing therefrom, doctrine of ejusdem generis being inapplicable.

4. Criminal Law—Corroboration of Defendant's Accomplice Held Sufficient to Sustain Conviction for Conspiracy to Break and Enter Storehouse.—Corroboration of defendant's accomplice held sufficient to sustain conviction for conspiracy to break and enter storehouse with intention of stealing therefrom.

5. Criminal Law—Discretionary with Court to Deny Continuance for Absent Witness and to Permit Defendant to Read to Jury What he would Say if Present.—It was discretionary with court to deny a continuance for an absent witness and to permit defendant to read to jury an affidavit of what such witness would say, if present, as witness' deposition.

6. Criminal Law—Court's Discretion Not Abused in Denying Continuance for Absent Witness.—Court did not abuse its discretion in denying continuance for absent witness in prosecution for conspiracy, where it permitted defendant to read to jury an affidavit of what such witness would say, if present, as witness' deposition, and testimony of such witness did not go to real issues, but only to contradict testimony of witness as to where defendant was on day after robbery.

7. Criminal Law—Any Error in Instruction Defining Conspiracy Held Cured by Another Instruction.—In prosecution for conspiracy to break and enter a storehouse and to steal therefrom, any error defining a criminal conspiracy as a corrupt agreement between two or more persons to do an unlawful act in not stating what would be such an unlawful act held cured, where court in another instruction pointed out what was the unlawful act in the case.

8. Conspiracy—Instruction Held Not Erroneous Because Not Requiring Conspiracy to be Formed to Break into Storehouse of Victim.—In prosecution for conspiracy to break and enter a storehouse with intention of stealing therefrom, instruction held not erroneous, because not requiring conspiracy to be formed to break into storehouse of particular person, since, if defendant with his confederates conspired to break into any storehouse, they would be guilty.

J. BELL NICHOLS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, and GARDNER K. BYERS, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant was tried and convicted under an indictment charging him with the offense of conspiring, confederating and banding together with certain other named accomplices for the purpose of breaking and entering a storehouse with the intention of stealing therefrom. On this appeal he insists that his demurrer to the indictment should have been sustained; that the corroboration of the accomplice who testified against him was not sufficient to support the conviction; that he was entitled to a continuance asked for; and that the instructions given by the trial court were erroneous.

Considering these contentions seriatim, we find that the indictment and prosecution in this case were had under section 1241a-1 of the Kentucky Statutes, which reads:

"If any two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming, disturbing or injuring any person or persons, or to rescue any person or persons charged with a public offense from any officer or other person having the lawful custody of any such person or persons, with the view of inflicting any kind of punishment on them, or with the view of preventing their lawful prosecution for any such offense or to do any felonious act, they, or either of them, shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than five years."

It is insisted that this section is not applicable to the state of facts present in his case and alleged in the descriptive part of the indictment. The facts shown by the testimony and amply set out in the indictment are that appellant, together with Ellis Pullum, Arthur Dillingham and Aaron Moore, entered into an agreement at Paducah, Kentucky, to break and enter the storehouse of George Goheen at Birmingham, in Marshall county, and to steal therefrom a quantity of merchandise. Pursuant to this conspiracy, the accomplices of appellant shortly thereafter broke and entered the storehouse of Goheen at Birmingham and stole from it a large quantity of wearing apparel and other merchandise. Appellant contends that this conspiracy does not come within the

prohibition of section 1241a-1, *supra,* because this statute is confined to the prevention of injury to person and property at the hands of riotous assemblages of persons, and to the punishment of conspiracies formed for the purpose of doing the acts specifically enumerated therein, as the expression ''to any felonious act'' appearing in such statute should be construed under the doctrine *ejusdem generis* to cover only those classes of offenses previously specifically enumerated.

It is true that in the case of Commonwealth v. Barnett, 196 Ky. 731, 245 S. W. 874, it was intimated that the above contentions might logically be urged in interpreting this section of the statutes. But it was not necessary to adopt such contentions in arriving at the result reached in that case, and the court specifically said:

> ''It is not altogether clear but that *ejusdem generis* doctrine should apply to the expression in the statute 'or to do any felonious act' . . . but under our view of the proper construction of the act it is not necessary to and we do not determine that question.''

In the Barnett case the court had to determine whether or not Barnett, who had testified in a prosecution under an indictment charging certain named conspirators with the offense of conspiring to prevent an election, had testified in a prosecution had under section 1241a-1, et seq., of the statutes. The offense of preventing an election is a misdemeanor, see Kentucky Statutes, section 1588, and hence the court did not have before it the question of a conspiracy to do a felonious act. It is, therefore, quite apparent that the Barnett case is not controlling of the question now before us.

Whatever may have been in the mind of the legislature when it enacted section 1241a-1, *supra,* and its companion sections, this court through a long line of decisions has given effect to what the legislature plainly said in those sections. Although it is claimed that the legislature meant by these sections to deal with riotous assemblages of persons, yet the sections are broader in wording than necessary to effect any such purpose, for they say ''if any two or more persons'' conspire to do the things denounced such persons shall be guilty. In Slaven v. Commonwealth, 197 Ky. 790, 248 S. W. 214, this court upheld a prosecution under section 1241a-1,

*supra,* of the statutes where Slaven and his brother, highly incensed because one Spradlin had accused Slaven of changing the mark on a hog, had pursuant to an understanding between them committed an assault upon Spradlin. Although these facts come clearly within the express wording of the statute, they are pretty far from constituting a riotous assemblage of persons. In Piercy v. Commonwealth, 195 Ky. 725, 244 S. W. 52, the appellant, together with two others, was indicted under the same section we are discussing for conspiring to commit an assault upon one Wells, and we sustained a conviction had under such indictment. The same is true of Keith v. Commonwealth, 195 Ky. 635, 243 S. W. 293.

As stated, these cases and many others which might be cited demonstrate that this court has always given effect to just what the legislature said in these sections of the statutes. Although all these cases present a situation of a conspiracy to do violence to person or property, it is not apparent why this court should not also give effect to what the legislature plainly said when the conspiracy is to do "any felonious act." Literally such conspiracy comes within the wording of the statute, and that such a conspiracy actually does is the necessary holding of this court in the case of Anderson v. Commonwealth, 203 Ky. 681, 262 S. W. 1105. We have again examined the record in that case and find that Anderson and his confederates were charged in the indictment with the offense of conspiring, confederating and banding themselves together for the purpose of committing a felony, to-wit, the obtention of money by false pretenses. Although nothing is said in the opinion about section 1241a-1, *supra,* it is quite apparent that the prosecution was had and the conviction upheld by this court under its provisions. This case, therefore, although it does not discuss the questions here raised, is authority for the position taken by the Commonwealth that a conspiracy to do any felonious act comes within the purview of this statute.

In deference, however, to the contention made by appellant and the suggestion thrown out in the Barnett case that the *ejusdem generis* rule should be applied here, we will address ourselves to its consideration. Although it is true that the general rule for the construction of a statute, is that when any general words follow an enumeration of particular things or objects set out in the statute, the general words will be construed as applicable only to

the persons or things of the same general nature or class as those enumerated, Brent v. Commonwealth, 194 Ky. 504, 240 S. W. 45; yet, as pointed out in 36 Cyc. 1121, this doctrine is only a rule of construction to be applied as an aid in ascertaining the legislative intent, and it does not control where it clearly appears from the statute as a whole that no such limitation was intended. Wallace v. Young, 5 T. B. Monroe, 155. Nor does this principle apply where the specific words of a statute describe subjects which differ greatly from one another. Jones v. State, 104 Ark, 261, 25 R. C. L. 998. Equally is this true where the specific words embrace all objections of their class so that the general words must bear a different meaning from the specific words or be meaningless. United States v. Mescall, 215 U. S. 26. Further, if the context discloses a legislative intention to give an effect to the general words different from the specific words, the courts will carry into effect such intention.

In the statute before us we find that it first denounces a conspiracy "to intimidate, alarm, disturb or injure any person or persons," most of which offenses, if consummated, would be misdemeanors. Secondly, it prohibits a conspiracy to interfere with the enforcement of law by rescuing prisoners and the like. Thirdly, it proscribes a conspiracy to do any felonious act. It will be observed that these three groups are each stated in terms general and inclusive, and in such way as to practically exhaust their respective genera. Further, each group widely differs from the other in nature and kind. When the legislature came to create the last group, it did not say "or to do any *other* felonious act." Indeed to have done so would have been quite inapt, since practically all of the acts comprised in the first two groups were misdemeanors only. The legislature, however, said "or to do *any* felonious act," and we think that this was plainly an effort on its part to establish a third class of offense, the conspiracy to commit which should be punishable under the act. It may further be observed that each of these groups is expressed in very general terms. It would be rather difficult to apply the doctrine of *ejusdem generis* to one rather than another of them. For instance, the phrase "intimidating, alarming, disturbing or injuring any person" is broad enough to include false imprisonment, assault and battery, robbery, breach of the peace, and possibly even slander, yet none of these offenses are

specifically mentioned. They are all, however, comprised in the general phrase used. It is, therefore, our conclusion after a careful consideration of the statute that the principle of *ejusdem generis* has no application here and the phrase "to do any felonious act," must be construed as it reads, and that the legislature plainly meant to bring within its purview any conspiracy entered into by two or more persons to do a felonious act. As stated, such was the necessary holding of this court in the Anderson case, *supra*. Hence the trial court did not err in overruling the demurrer to the indictment herein.

Appellant next urges that the corroboration of the accomplice who testified in this case was not sufficient to sustain his conviction. The testimony discloses, however, that numerous witnesses saw the appellant in the afternoon and late evening preceding the night of the robbery in consultation with those who are charged with being his fellow conspirators and who committed the actual act of robbery. One of these confederates is the accomplice who testified in this case and his testimony covers all the details of the conspiracy and its consummation. It further appears in evidence that a quantity of the stolen goods was found in a work shed near which appellant was working at the time of his arrest and their discovery, and the key to which was in appellant's possession. Some of the goods were found in a room which the evidence tended to show was occupied by appellant. There is further testimony that the wife of the testifying accomplice heard appellant say to one of his alleged confederates the day after the robbery that the boys (*i. e.* those who had committed the robbery) had gotten too many socks and that he did not know what to do with them, and that nobody would think anything about him as he did all his car work back of the house. From this, it is apparent that there was ample evidence to corroborate the accomplice.

At the trial, a continuance was asked for on the grounds of an absent witness. However, the court permitted the appellant to read to the jury an affidavit of what this witness would say if present as the witness' deposition. This was a matter within the discretion of the trial court as conceded in appellant's brief and we do not think it abused such discretion, particularly in view of the fact that the testimony of this witness did not go to the real issues in the case but only to contradict

the testimony of the wife of the testifying accomplice as to where appellant was on the day after the robbery. Indeed, this deposition did not really contradict such wife as appellant could well have been where his witness said he was at the hour named and yet been where his wife said he was at the hour named, which was later in time to that testified about by appellant's witness.

Lastly it is claimed that the instructions given were erroneous. It is complained that the first instruction, which reads: "The court instructs the jury that a criminal conspiracy as charged in the indictment herein means a corrupt combination and agreement between two or more persons to do by concert of action an unlawful act or to do a lawful act by unlawful means;" is erroneous in that the jury was not told what would be such an unlawful act. It may be said that in Commonwealth v. Ellis, 133 Ky. 625, 118 S. W. 973, this instruction was approved. Further, by the second instruction the court plainly pointed out what was the unlawful act in this case, the conspiracy to commit which was the offense charged. In Holcomb v. Commonwealth, 207 Ky. 367, 269 S. W. 349, we held that instructions must be read together and if when so done they fairly inform the jury of the law of the case, that is all that is required. The second instruction is criticized because the court did not require the consipracy, if any, to be formed to break into the storehouse of George Goheen. However, if the appellant and his confederates conspired to break into any storehouse, they conspired to do a felonious act, and hence were guilty under the statute. There was no error then in this connection.

Perceiving no errors prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.

Whole court sitting.