## Eubank v. Commonwealth.

(Decided June 5, 1925.)

## Appeal from Clark Circuit Court.

1. Indictment and Information—Indictment for Conspiracy to do a Felonious Act Held to Charge an Offense.—Indictment under Ky. Stats., section 1241a-1, for conspiracy to do a felonious act held to charge a public offense, and "ejusdem generis doctrine," which is merely rule of construction followed in effort to ascertain legislative intention, would not be adopted to confine statute to that class of offenses specifically enumerated only, in view of obvious conclusion that legislature intended just what it said.

2. Conspiracy—Evidence Sufficient to Sustain Conviction.—In prosecution for conspiracy against one who was robbed while in possession of another's money by his alleged confederates, evidence held to sustain conviction.

3. Criminal Law—Accused Cannot Complain of Too Favorable Instructions.—Accused cannot complain because instructions required jury to believe more than necessary to convict.

4. Conspiracy—Necessary Elements of Conspiracy Indicated.—That accused conspired with another to take money of greater value than $20.00, without knowledge or consent of owner, and with fraudulent intent to deprive him of it and permanently convert it to his own use, would be sufficient to render him guilty of conspiracy under Ky. Stats., section 1241a-1.

5. Witnesses—Former Statement Denying Ownership Properly Admitted, where Testimony of Witness was Assailed as Recent Fabrication.—Although, as general rule, testimony as to owner-

ship cannot be corroborated by proof of previous similar statements, where witness was assailed on ground that his denial of ownership was recent fabrication and that he had motive for testifying falsely, former statement denying ownership, made when motive did not exist, was properly admitted.

6. Witnesses—Testimony in Contradiction Properly Excluded in Absence of Foundation.—Exclusion of testimony, that witness had stated, after day of so-called robbery, that stolen money was accused's, was properly excluded, in absence of a foundation for the contradiction.

7. Criminal Law—New Trial Not Granted for Newly Discovered Evidence which was Merely Cumulative and Tended to Impeach.—In prosecution for conspiracy to rob, application for new trial for newly discovered evidence, consisting merely of testimony that state's witness had said that it was accused's money which was stolen, and which was merely cumulative and tending to impeach that witness was properly refused.

W. B. WHITE, RODNEY HAGGARD (O'REAR, FOWLER & WALLACE, of counsel), for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The appellant was found guilty of conspiracy to commit a felony, and his punishment fixed at two and one-half years' confinement in the penitentiary. On February 20, 1924, appellant hauled a truck load of tobacco from Montgomery county to Lexington, where he delivered it to the warehouse. The next day he hauled a second load which was delivered to the same warehouse. These two loads of tobacco when sold, brought $655.02. With the appellant at the time of the sale was a young negro man named Stafford Hutsell, who says he owned the tobacco, but who says that appellant induced him to allow the tobacco to be sold in the name of appellant and assured him that if he would do so, it would bring more money. After the tobacco was sold, appellant cashed the check and gave the negro (appellant says loaned him) $5.00.

By various means, appellant delayed their departure from Lexington until late in the evening, in fact, the street lights had been lighted before they left, and on their way home, after they had passed through Winchester and were still in Clark county, an automobile drove past their truck, wheeled across in front of them and

stopped.    Appellant stopped the truck.    Two masked men got out of the automobile, drew pistols and demanded this money.    Appellant had the money, and he surrendered it.    This so-called robbery was carried out in true motion picture style.    A few days thereafter the following indictment was returned:

> "The grand jury of Clark county in the name and by the authority of the Commonwealth of Kentucky accuses Richard G. Eubank, Asa Eubank, Roger Green and Guy Barnes of the crime of unlawfully, willfully and feloniously confederating or banding themselves together for the purposes of doing a felonious act committed as follows, viz.: That said Richard G. Eubank, Asa Eubank, Roger Green and Guy Barnes on the 17th day of April, 1924, in the county aforesaid and before the finding of this indictment did unlawfully, wilfully and feloniously confederate or band themselves together for the unlawful and felonious purpose of doing a felonious act and in pursuance of said conspiracy theretofore entered into as aforesaid did unlawfully, wilfully and feloniously take, steal and carry away a lot of good and lawful money of the United States of greater value than twenty dollars, the exact amount and description of which is to the grand jury unknown, the personal property of Stafford Hutsell, without the knowledge or consent of the said Stafford Hutsell, with the felonious and fraudulent intent to deprive the said Stafford Hutsell of his property therein, and to permanently convert the same to their own use against the peace and dignity of the Commonwealth of Kentucky.
>
>       "WILLIAM J. BAXTER, Commonwealth Atty."

To that indictment the appellant filed a general demurrer, and after he was convicted he filed a motion to arrest the judgment.    Both his demurrer and motion to arrest the judgment were overruled, and these alleged errors are the principal ones of which he is complaining, it being his contention that the indictment did not charge a public offense and that the words "or to do any felonious act" contained in section 1241a-1 of the statutes must be construed under the ejusdem generis doctrine to include only that class of offenses specifically enumerated in the words that immediately precede them.    This court has recently had this same question before it, and after much discus-

sion, has reached a conclusion adverse to appellant's contention. This conclusion was announced in the case of Phelps v. Com., 209 Ky. 318; 272 S. W. 743. The *ejusdem generis* doctrine was never anything more than a rule of construction followed by the courts in an effort to ascertain the intention of the legislative branch of the government, and has no application where the act in question is so clear as to leave no doubt about what the legislature intended. After a careful consideration of section 1241a-1 this court reached the conclusion that the legislature intended just what it said; that the legislature had become convinced that evildoers were more dangerous when acting in concert and that they became a greater menace to society when they joined themselves together for the purpose of carrying out their evil designs, and with that in view, the legislature had by this statute provided that if two or more persons confederate or band themselves together to do any felonious act, they or either of them shall be guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than five years. This disposes of appellant's major contentions.

Appellant says that his conviction was flagrantly against the evidence. He insists this was his tobacco; that he had bought this tobacco from J. D. Hutsell, the father of Stafford Hutsell, and that after this robbery he paid the elder Hutsell for it. Stafford Hutsell contends that this was his tobacco; that he employed appellant to haul it to market for him; that after they got to market, appellant persuaded Hutsell to allow this tobacco to be sold in appellant's name; that appellant did sell it in his name and got the checks for it; but instead of endorsing the checks and delivering them to Stafford Hutsell, appellant insisted on cashing the checks, and that after he cashed them he made a pretense of offering the money to Stafford, but then remarked that he expected he had better keep it, as it would be safer in his possession, and said: "No, I'd better not give you this money here, there's no telling who is watching us."

As stated, appellant delayed their departure from Lexington. He took an unusual road, and between Lexington and Winchester they had motor trouble which Stafford Hutsell says was purposely produced by appellant. Directly after they had turned off the main road and were driving on the Wade's Mill pike, appellant began to look back, which caused Hutsell to do likewise.

Soon a light appeared behind them, a car passed them and wheeled across the road in front of them. The alleged robbery then took place. Hutsell says he recognized one of the so-called robbers, both by his stature and his voice, as Asa Eubank, brother of appellant, but said nothing for fear of personal danger. The robbers went through the form of knocking appellant down. He pretended he was struck over the head with a black jack, and that quite a knot formed as a result of it. Hutsell was unable to see or feel any knot. The robbery proceeded true to form. The robbers took the key to the car, threw it under the car and directed appellant and Hutsell not to move for ten minutes. They then left. Shortly after this supposed robbery, Hutsell and appellant got up and went to a neighboring house to use a telephone. They found no telephone there, and went to a second house, and telephoned to Winchester. They had some officers come out to investigate the so-called robbery. Appellant, before the officers came, said to Hutsell: "Stafford, listen. I have sold this tobacco in my name and you let me do all the talking and don't you say anything, and if anybody asks you, tell them yes, it's my tobacco." They went to the house of a Mr. Allen, where appellant told his story, and Mr. and Mrs. Allen examined appellant's head, but testified they failed to find any knot. The next day appellant made no effort to run down or get any trace of the so-called robbers. Hutsell came to see appellant and appellant suggested to him and the elder Hutsell that they could get their money back by raising a big crop of tobacco next year, and insuring their barn and its contents. They could then take the tobacco out and sell it, remove the farming implements, set the barn on fire and let it burn. He said that that was the best way to get their money back, and that if they went to fooling after the robbers, the pool would get onto them.

Appellant claims to have bought this tobacco from the elder Hutsell and produces a check which reads as follows:

"$35.00        Mt. Sterling, Ky., Feb. 14, 1924.

THE EXCHANGE BANK OF KENTUCKY, 73-148

Pay to:............J. D. HUTSELL............or bearer
Thirty-five _____ Dollars
For............Cash 65.00 check $35.00 adv. on tobacco............
                          RICHARD EUBANK."

This check bears the endorsement of J. D. Hutsell and was paid by the bank on February 20, 1924. J. D. Hutsell claims that in the receipt line of this check there was only one word when it was given to him and when he turned it in to the bank, and that was the word "cash." He says that the other words on that line were added after the check went through the bank; that the check when he took it to the bank was:

"$35.00               Mt. Sterling, Ky., Feb. 14, 1924.

THE EXCHANGE BANK OF KENTUCKY, 73-148

Pay to..................J. D. HUTSELL..................or bearer
Thirty-five ................................................... Dollars
For Cash..................................................
                              RICHARD EUBANK."

This check is before us. It contains a number of perforations made by a Cummings check canceller which cut into the check a series of perforations, reading: "Paid 2-20-24." We have carefully examined this check. There are three fives on it, two of which are alike. The third is unlike its companions, and its distorted shape can perhaps be accounted for by an effort to make it around these perforations.

J. D. Hutsell says that this $35.00 was for borrowed money, and that after he got this check he tried to get a Mr. Baldwin to cash it for him; that he owed Baldwin some money and wanted to make him a payment out of that check. Baldwin examined the check carefully, but was unable to cash it. Baldwin testified that the words and figures, "65.00 check $35.00 adv. on tobacco," were not on the check when he looked at it.

Appellant testified that he wrote this check in the kitchen at his home; that all the matter contained in it was written in it at the same time; that he had bought this crop of tobacco from J. D. Hutsell and was then paying him $100.00 upon it; that he paid $65.00 of this in cash and gave him a check for the remaining $35.00, and wrote all of this into this check at the same time. He introduced Mrs. Zora Ballard, who was cooking for the Eubanks family, and who says that J. D. Hutsell and Richard Eubank were in the kitchen; that Richard Eubank gave J. D. Hutsell $65.00 in money and $35.00 in check. She remembers seeing him write the check.

Jesse Flora was introduced and he said that he saw J. D. Hutsell come from the direction of the kitchen of

the Eubank home. He says that he saw them in a buggy shortly before that. J. D. Hutsell says that that check was written in the buggy; that appellant had a number of checks; that he wrote this one, tore it off and gave it to him. The jury had the check before them; we also have it before us. The jury perhaps looked at it carefully and we have examined it carefully. No one can give this check a careful examination without being struck by the difference in the appearance of the first part of the check and that part of it which Hutsell claims was written on it after the check went through the bank. When this check is examined under a strong glass, the difference becomes more striking. The appearance of the check perhaps induced the jury to believe that this questioned part of it was written at a different time from the remaining part. It has so convinced us. The check was filled out with a lead pencil. When words are written with a pencil upon a piece of paper at a time when the paper is resting upon some soft material, as other sheets of paper, and the writing is examined under a powerful glass, the material abraded from the pencil in the writing is found to be distributed in an even and uniform line upon the surface of the paper, and the written matter can be easily erased. When this same paper is written upon with this same pencil at a time when the paper is resting upon some smooth hard substance, as a sheet of glass or the smooth polished top of a desk, the material abraded from the pencil is shown by the glass to be distributed in a line less regular and to be pushed into and embedded in the fibers of the paper itself, and its erasure is much more difficult. The body of the check in question, which we have examined with a strong glass, appears to have been written when the check was resting upon some soft material. The questioned part was apparently written when the check was resting upon a surface of some harder material, and seems to have been written after the check had been folded.

Appellant claims that he was to pay J. D. Hutsell 10c per pound for this tobacco. There were 3,170 pounds of it, and that he paid him $100.00 at the time the check was given and that through his father, he paid him $217.00 on the morning after the so-called robbery. J. D. Hutsell denied the receipt of the $100.00, also the $217.00.

L. B. Hadden, a deputy sheriff and kinsman of appellant, was introduced, and he testified that in a conver-

sation with appellant after the robbery, he said to him: "Dick, you would have put up a better fight if the $500.00 had been yours." Appellant replied, "Yes, I would, but it belonged to the negro, and I was not going to take any chances." All of these matters were questions for the jury. The jury found against appellant.

Appellant complains of the instructions, which are:

1. "If the jury believe from the evidence beyond a reasonable doubt that in Clark county and before the finding of the indictment. the defendant, Richard G. Eubank, unlawfully, wilfully, and feloniously entered into a conspiracy with Asa Eubank, the object of which was to take, steal and carry away lawful money of the United States, the personal property of Stafford Hutsell, and further believe from the evidence beyond a reasonable doubt that as a result of said conspiracy, if any, and in pursuance thereof and while the same existed, if it did exist, the said Asa Eubank in Clark county and before the finding of the indictment and after said conspiracy was entered into, if it was entered into, and in pursuance thereof did unlawfully, wilfully and feloniously take, steal and carry away a lot of good and lawful money of the United States of greater value than twenty ($20.00) dollars, the personal property of Stafford Hutsell, without his knowledge or consent and with the fraudulent intent to deprive said Stafford Hutsell of his property therein and to permanently convert said money to the use of Asa Eubank and Richard G. Eubank, or either of them, they will find the defendant, Richard G. Eubank, guilty and fix his punishment at confinement in the penitentiary for a period of not less than one year nor more than five years in the discretion of the jury.

2. "A criminal conspiracy as charged in the indictment means a corrupt combination or agreement between two or more persons to do by concert of action an unlawful act or to do a lawful act by unlawful means.

3. "Unless the defendant has been proven guilty beyond a reasonable doubt the jury will find him not guilty."

Appellant says that he was indicted for conspiracy, that he was tried for robbery and that under these in-

structions the jury convicted him of larceny. Instruction No. 1 required the jury to believe more than it was necessary that they should believe, but appellant cannot complain, because the jury was required, in order to convict him, to believe more than the law required them to believe. In other words, if the instructions were more favorable to him than the law, he cannot complain of it. This instruction No. 1 would have been sufficient if it had only been as follows:

> "If the jury believe from the evidence beyond a reasonable doubt that in Clark county and before the finding of the indictment, the defendant, Richard G. Eubank, unlawfully, wilfully and feloniously entered into a conspiracy with Asa Eubank, the object of which was to take, steal and carry away lawful money of the United States of greater value than $20.00 the personal property of Stafford Hutsell, without his knowledge or consent and with the fraudulent intent to deprive said Hutsell of his property therein, and to permanently convert same to their own use, they will find the defendant, Richard G. Eubank, guilty and fix his punishment at confinement in the penitentiary for a period of not less than one year nor more than five years in the discretion of the jury."

Leslie Chamberlain was permitted to testify, over the objection of appellant, to the following:

> "In the spring of 1923 I went to see John D. Hutsell about renting a barn on the farm, and John said he was not raising any crop at all, that Stafford was raising the crop and I would have to see him, and I went down to where Stafford was and asked him about the barn. Stafford said he was going to fill it himself if he could, and that if he had any room left I could have it; but he would not promise me any for sure. This was before the tobacco was set out."

As the ownership of this tobacco was sharply in issue, this being a corroborating declaration of Stafford Hutsell and J. D. Hutsell, appellant insists it should have been excluded. As a general rule, a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony. Where, however, a witness has been assailed on

the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the matter when the motive did not exist, before the effect of such an account could be foreseen, or when motive or interest would have induced a different statement, is admissible. In support of this doctrine see Wharton on Evidence, section 570; Taylor on Evidence, section 1330; Baltimore City P. Ry. Co. v. Knee, 34 A. 252, 83 Md. 77; Driggers v. U. S., 95 P. 612, 21 Okla, 60, 1 Okla. Crim. 167, 129 Am. St. R. 823, 17 A. and E. Ann. Cas. 66.

The case of Slone v. Com., 33 Ky. L. R. 266, 110 S. W. 235, is not in conflict with this, as all the facts necessary to make such a corroborating statement competent did not appear in that case, whereas they do appear in this one.

In Morgan v. Williams, 179 Ky. 428, 200 S. W. 650, this court said:

"Another error relied on is the admission of plaintiff's declarations of ownership made when Mrs. Lyen was not present. It appears, however, that these declarations were all made while plaintiff was in the possession of the machine, and it is universally held that the declarations of a person in the possession of personal property are admissible for the purpose of showing the character of his possession and to prove title or ownership, even though such declarations are self-serving. R. C. L., 490; Com. v. Fletcher, 69 Ky. 172; Eureka Ins. Co. v. Robinson, 56 Pa. 256, 94 Am. Dec. 66."

He complains further that the court refused to allow W. W. Eubank to testify that John D. Hutsell stated to Ben Caudill on the day after the so-called robbery that the stolen money was Richard Eubank's money. The appellant sought by this to contradict John D. Hutsell, but he had laid no foundation for the contradiction, hence the court properly excluded the evidence.

After his grounds for new trial had been filed, his motion overruled, his sentence pronounced, judgment entered, and bond executed, pending appeal, the defendant was permitted to file an amended motion and grounds for new trial in which he asserted as an additional ground that he had discovered new evidence in his behalf, and he filed the affidavits of Dr. J. K. Johnson, Brooks Barnes,

R. W. Baugus, and J. W. Motley. From the affidavits it appears that he could prove by these witnesses that after the robbery, Stafford Hutsell told them that it was Dick Eubank's money that was stolen. Without now passing on the question whether or not appellant could at this point amend his motion and grounds for new trial, merely remarking that Com. v. Brogan, 163 Ky. 748, 174 S. W. 473, appears to be against him, and addressing ourselves to this new evidence, we cannot feel that it would have changed the result, for Stafford Hutsell testified that the appellant told him he should say that this tobacco belonged to appellant, as we have stated in the early part of this opinion, and if Stafford Hutsell said these things, he was only carrying out Eubank's instructions, and this evidence, if introduced, is only cumulative and tends to impeach Stafford Hutsell by showing that he made different statements outside of court from those he made in court. This court has repeatedly held that a new trial will not be usually granted because of the discovery of such evidence. See Bolin v. Com., 206 Ky. 608, 268 S. W. 306, Lee v. Com., 203 Ky. 63, 261 S. W. 842. The two principal witnesses in this matter were Stafford Hutsell, a negro man, and the appellant. Both were submitted to gruelling cross-examination. Under cross-examination Hutsell stood up fine, and when his evidence is read, it impresses one as being true. On direct examination appellant testified fully and freely about the so-called robbery, but when he was submitted to cross-examination, his memory failed; he could remember but little about it. The check that is in the record is against him. His reputation and that of his father were successfully attacked; some of his own witnesses, on cross-examination testified appellant's reputation was bad.

The charge against appellant was conspiracy to do a felonious act. The felonious act contemplated by the conspirators was to accomplish by trickery the larceny of this negro's money. The jury believed the conspiracy was formed. That completed the crime. The evidence supports the verdict. The judgment is affirmed. The whole court sitting.