# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0287-MR

JERMAINE WILLIAMS                                        APPELLANT

V.                       ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JULIE KAELIN, JUDGE
NO. 18-CR-001915

COMMONWEALTH OF KENTUCKY                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A jury convicted Jermaine Williams in Jefferson Circuit Court of manslaughter in the second degree and being a convicted felon in possession of a handgun.  He was sentenced to twenty years' imprisonment and now appeals as a matter of right[1] raising two allegations of error in seeking reversal. Following a careful review, we affirm.

On June 6, 2018, Louisville Metro Police Department (LMPD) Officers Kierstan Holman and Justin Nava each drove by 1770 West Oak Street in Louisville several times.  Multiple people were seen standing outside around 10:30 p.m.  Approximately two hours later, Officer Holman observed only three people, two of whom seemed to be in a heated argument on the sidewalk in

---

[1] KY. CONST. §110(2)(b).

front of the home. Officer Holman drove around the block to ensure the fight did not become physical. As she passed the home again, the altercation seemed to have cooled, so she and Officer Nava continued their normal patrols.

A short time later, a call came across the police radio about a shooting which had occurred at 1770 West Oak Street. Upon arrival at the scene, Officer Holman saw Darryl Lewis lying on the ground. She recognized Lewis as one of the men who had been fighting at the location earlier in the evening. He had been shot multiple times and died as a result of his injuries. Officer Holman noted Lewis was wearing shorts and a dark t-shirt and a cellphone had fallen out of his waistband. Other officers arrived and began processing the scene. Lewis' blood was found on a BMW parked in front of the home. Officers knocked on the door of 1770 West Oak Street but received no response.

Around 2:00 a.m., after police had been at the crime scene for approximately an hour, Williams calmly walked out of the house carrying a duffle bag and told police he was leaving to catch a cab. When asked if he knew anything about the shooting, Williams said he had heard three or four gunshots and saw three black males running down West Oak Street. He allowed responding officers to enter the home after he informed them there were two other individuals inside. Upon exiting the residence, the officers learned Williams' name and discovered he had an outstanding warrant for his arrest. He was taken into custody and a search incident to arrest was conducted. Officer Holman found a blue latex glove in Williams' pocket which contained multiple spent shell casings and projectiles. Officer Nava searched

2

the duffle bag and located a .38 special revolver, more latex gloves, and some toiletries. Subsequent ballistics testing of the spent shell casings and projectiles located on Williams' person and at the scene revealed four recovered casings and two projectiles had been fired from Williams' revolver.

Williams invoked his right to counsel and refused to speak to police about the shooting. His hands were swabbed, and testing revealed the presence of gunshot residue. Williams was subsequently charged with murder, being a felon in possession of a handgun, and violating a protective order.[2]

During trial, Williams testified and did not deny shooting Lewis. The thrust of his defense was that he shot Lewis in self-defense. He indicated he had gone to sleep around 9:00 p.m. on the night of the incident. At some point, he was awakened by "a whole bunch of chaos" outside. He looked out the window and observed Lewis fighting with two men. Williams claimed to know none of the three men. A man he did know, Snoop, was watching the fight and trying to calm Lewis down. Williams said the fighting went on for some time, with Lewis getting knocked down by one of the men then getting up to fight the other. The altercation ended with Lewis walking down an alleyway while proclaiming he was leaving to get his gun. The other two men walked away, leaving only Snoop outside the residence.

Williams went out to speak with Snoop when Lewis reappeared, holding a piece of broken concrete. Lewis and Snoop began arguing and Snoop told

_____

[2] At trial, the Commonwealth moved to dismiss the latter charge.

Lewis he needed to calm down and go home. Williams, who said he had been sitting on the hood of a car parked on the curb, indicated he tried to go back inside but Lewis confronted him. Lewis was larger and stronger than Williams which Williams said made him afraid, especially since Lewis had previously been fighting two men and kept coming back for more, even after being knocked down. Williams said he saw a bulge at Lewis' waist as he approached which Williams believed to be a firearm. He admitted Lewis had not reached for anything and Williams had not seen him with a weapon that night. Because of his fear and the events of the night, Williams drew his own firearm and shot Lewis four times, once in the head, once in the hip, and twice in the chest. Two of the shots proved fatal.

The jury acquitted Williams of murder but found him guilty of the lesser-included offense of manslaughter in the second degree and being a convicted felon in possession of a handgun. Consecutive ten-year sentences for each count were recommended by the jury and subsequently imposed by the trial court. This appeal followed.

Williams alleges the trial court committed two reversible errors. First, he asserts the trial court improperly prohibited trial counsel from asking Williams on re-direct examination about his previous claims of self-defense. Second, he contends on several occasions the trial court failed to admonish the jury as required by RCr[3] 9.70.

---

[3] Kentucky Rules of Criminal Procedure.

For his first allegation of error, Williams claims the trial court erred in precluding trial counsel from questioning him about a previous court appearance where Williams claimed he shot Lewis in self-defense. During his direct examination, Williams stated he had been wanting to tell his story for a while. At a bench conference, the Commonwealth argued Williams had opened the door to questioning about his refusal to speak with police on the night of the shooting. Defense counsel conceded the door had been opened and the trial court permitted the line of questioning.

On cross-examination, the Commonwealth extensively questioned Williams regarding the failure to speak with police since—as he professed on direct examination—he so badly wanted to tell his side of the story. Williams was evasive, abrasive, and argumentative, often responding to the Commonwealth's questions with questions of his own. The Commonwealth was ultimately able to elicit responses indicating Williams had initially told police he saw three black males running away from the scene. Additional questioning emphasized Williams had not indicated he shot Lewis in self-defense, even after police located a revolver in his duffle bag hours after the shooting. Williams admitted he told police nothing at the scene about how Lewis came to be found dead in front of Williams' home. He also testified that later that evening he told police he would not speak without an attorney present. The plain implication of the Commonwealth's questioning was, contrary to his assertions under direct examination, Williams had done everything but try to tell his self-defense story.

5

On re-direct examination, defense counsel attempted to ask Williams if he recalled making a statement previously, but the Commonwealth objected, and a bench conference ensued. Defense counsel, in an effort to respond to what he believed was the Commonwealth's inference to the jury regarding a recent fabrication, indicated he wanted to ask about a previous court appearance during which Williams had blurted out that he had killed Lewis in self-defense. The Commonwealth contended defense counsel was merely attempting to bolster Williams' own testimony. In response, defense counsel argued Williams had said he wanted to tell his story "for some time" but never said he had told the truth from the beginning. Because the court appearance at which the alleged proclamation of self-defense occurred in 2020, he intended to ask Williams about it because that was "some time ago." Counsel further alleged the Commonwealth had opened the door to the line of questioning by implying to the jury that Williams had raised self-defense for the first time that day. Neither party cited a rule of evidence or caselaw in support of their relative positions. In sustaining the Commonwealth's objection, the trial court referred to Williams' proposed testimony as bolstering and believed admitting it would "open up such a can of worms."

Rulings on the admissibility of evidence are reviewed for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000). An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). Williams argues

6

the trial court abused its discretion in excluding the evidence, alleging his prior claim of self-defense was admissible as substantive evidence rebutting the Commonwealth's implication of a recent fabrication and to rehabilitate his credibility after the Commonwealth attacked it. We disagree.

"The law is well established that '[a] witness is not permitted to bolster her own testimony unless and until her credibility has been attacked.'" *Garrett v. Commonwealth*, 534 S.W.3d 217, 225 (Ky. 2017) (quoting *Tackett v. Commonwealth*, 445 S.W.3d 20, 32 (Ky. 2014)). Once the credibility of a witness has been attacked, a prior consistent statement may be introduced when offered "to rebut an express or implied charge against the declarant of a recent fabrication or improper influence or motive[.]" KRE[4] 801A(a)(2). Such prior consistent statements must have been "made before the alleged motive to fabricate came into existence." *Slaven v. Commonwealth*, 962 S.W.2d 845, 858 (Ky. 1997). However, these statements are inadmissible when they are merely "offered to prove that the declarant's trial testimony is truthful because it is consistent with her prior statements." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688 (Ky. 2009) (quoting *Dickerson v. Commonwealth*, 174 S.W.3d 451, 472 (Ky. 2005)). The longstanding rule in Kentucky is that generally

> a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony. Where, however, a witness has been assailed on the ground that his story is a *recent* fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the matter when the motive did *not* exist, *before* the effect of such an account could be foreseen, or when motive or interest would

---

[4] Kentucky Rules of Evidence.

7

have induced a different statement, is admissible.

*Eubank v. Commonwealth,* 210 Ky. 150, 275 S.W. 630, 633 (1925) (emphasis added).

Both at trial and on this appeal, Williams has failed to demonstrate that he did not have a motive to fabricate at the time he made his claims of self-defense in 2020, which was nearly two years after Lewis was killed. The claim came well after he was arrested and was made aware of the Commonwealth's evidence against him. It was inconsistent with his statements to police on the night of the shooting that he saw three men running from the scene and his attempts to distance himself completely from any involvement. Williams consistently attempted to conceal, deflect, and downplay his responsibility for Lewis' death by offering differing version of events. The incentive to lie about what happened arose at the time he pulled the trigger of his revolver four times. His motivation to fabricate simply did not change from the night of the shooting through his trial. Indeed, he admitted during his trial testimony he believed his best plan was to obfuscate and lie from the very beginning. Therefore, because Williams' motive to fabricate clearly existed prior to his 2020 claim of self-defense, those prior statements were inadmissible as substantive evidence under KRE 404A(a)(2) to bolster his trial testimony.

In addition, Williams was not entitled to introduce his previous claim of self-defense for rehabilitative purposes. A witness's "post-motive" prior consistent statements may be offered for purposes other than proof of the truth of their contents such as when they are "offered primarily for rehabilitative, not

8

substantive purposes." *Noel v. Commonwealth,* 76 S.W.3d 923, 929 (Ky. 2002). "In such a case, the statement is not admitted under KRE 801A(a)(2) as a prior consistent statement. Indeed, KRE 801A(a)(2) does not even address this scenario[.]" *James v. Commonwealth,* 360 S.W.3d 189, 206 (Ky. 2012). Instead, the prior statement is admitted as non-hearsay "because it is offered not for the truth of the matter but to 'rehabilitate . . . credibility.'" *Id.* (quoting *Engebretsen v. Fairchild Aircraft Corp.,* 21 F.3d 721, 730 (6th Cir. 1994)). However, it must be shown that "the statement [has] 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" *Noel,* 76 S.W.3d at 929 (quoting *United States v. Ellis,* 121 F.3d 908, 920 (4th Cir. 1997)). Williams' entire defense was that he shot Lewis in self-defense. Based on the facts of this case, the attempt to introduce his 2020 consistent claim of self-defense could have no purpose other than to try to show the jury he was telling them the truth from the stand. Because no other "rebutting force" exists, introduction of the prior statement for rehabilitative purposes was unwarranted. We discern no error in the trial court's decision to exclude the testimony.

Second, Williams argues the trial court committed reversible error when it failed to admonish the jury during several recesses of the trial. He points to six instances over the course of the four-day trial where the trial court did not give or refer to the admonition. Defense counsel did not object to any of these failures. Thus, the issue is not preserved for appellate review. *Salinas v.*

*Commonwealth,* 84 S.W.3d 913, 917 (Ky. 2002). While Williams admits this claim of error is unpreserved, he seeks review under the palpable error standard set forth in RCr 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

A palpable error is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (quoting *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997)). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

RCr 9.70 provides as follows:

> The jurors, whether permitted to separate or kept in charge of officers, must be admonished by the court that it is their duty not to permit anyone to speak to, or communicate with, them on any subject connected with the trial, and that all attempts to do so should be immediately reported by them to the court, and that they should not converse among themselves on any subject connected with the trial, nor form, nor express any opinion thereon, until the cause be finally submitted to them. This admonition must be given or referred to by the court at each adjournment.

The Commonwealth concedes the trial court did not admonish the jury on the occasions noted by Williams. It observes, however, that the court did

10

properly admonish the jury on all other occasions when the jury was excused from the courtroom.

We agree the trial court erred in failing to admonish the jury prior to each recess. However, while RCr 9.70 requires an admonition at each adjournment, "in the absence of some showing of misconduct, substantial compliance with [the rule] will suffice." *Commonwealth v. Messex,* 736 S.W.2d 341, 342 (Ky. 1987). Williams has not suggested or shown that he was actually prejudiced by these failures. Furthermore, he does not identify any instance where any member of the jury behaved contrary to the mandate of the admonitions which were given. *Messex,* 736 S.W.2d at 342 (Ky. 1987); *Schweinefuss v. Commonwealth,* 395 S.W.2d 370 (Ky. 1965). Moreover, a review of the record reveals the trial court gave numerous, detailed admonitions throughout the course of this lengthy trial. Thus, we assume any supposed error was harmless and reversal is not warranted. RCr 9.24. This is particularly true where, as here, as we are reviewing the issue under a palpable error standard. *See, e.g., Salinas,* 84 S.W.3d at 917; *Messex,* 736 S.W.2d at 342; *Daniels v. Commonwealth,* 404 S.W.2d 446, 447 (Ky. 1966).

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

11

COUNSEL FOR APPELLANT:

Joshua M. Reho
Louisville Metro Public Defender's Office


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General

Jenny L. Sanders
Assistant Attorney General