## Model Drug Company v. Patton.

(Decided March 17, 1925.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1.  Druggists—Finding of Negligent Poisoning Sustained.—Evidence held to sustain finding that plaintiff was poisoned as a result of carelessness of drug company in putting wrong label on bottle from which she was administered poisonous medicine.

2. Damages—$1,200.00 for Negligence of Drug Company in Placing Wrong Label on Bottle of Medicine Administered to Plaintiff Held Not Excessive.—Damages of $1,200.00 for drug company's negligence in putting wrong label on bottle from which plaintiff was administered poisonous medicine held not excessive, where plaintiff's mouth and throat were burned and inflamed and her digestive organs upset, and she was disabled from following her occupation of laundress or tending to her household duties for a considerable period of time.

3. Witnesses—Plaintiff Properly Allowed to Contradict Own Witness where Testimony Operating as Surprise.—Where witness had led plaintiff to believe that he would testify that "creolin" was a poisonous medicine, his testimony at trial that it was merely an antiseptic, and not poisonous, was calculated to surprise plaintiff, and court did not err in allowing plaintiff's counsel to contradict such evidence, in view of Civil Code of Practice, section 596, by introducing himself as a witness and testifying as to what such witness had said to him concerning poisonous nature of "creolin."

4. Appeal and Error—Court's Failure to Admonish as to Purpose of Evidence Held Harmless.—Failure of court to admonish as to purpose of evidence to contradict plaintiff's own witness was harmless, in absence of motion or suggestion by defendant to that end.

S. W. ADAMS and GEORGE E. PHILLIPS for appellant.

R. G. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The judgment from which this appeal is presecuted awards Amanda Patton $1,200.00 in damages against the Model Drug Company for injuries to her person, and for pain and suffering endured by her as the result of the negligence of the agents of the drug company in placing the wrong label and directions on a bottle of poisonous medicine which was later administered to her. The appellant drug company filled the prescription and placed the directions on the bottle. The attending physician gave two prescriptions, one to be taken internally and the other to be used as a douche by appellee, Patton. The appellant drug company confused the prescriptions and directions, placing the directions to take internally on the bottle containing medicine intended for a douche, and the directions for the douche on the medicine intended to be taken internally.

Appellee, Patton, is a colored woman of middle age. The appellant drug company is operated by colored

people in Covington. It holds itself out as prepared to fill prescriptions of doctors for medicine and undertook, as it is alleged and admitted, to fill the prescriptions given by Dr. Randolph, a colored physician, to appellee, Amanda Patton, in May, 1923. Appellee had been sick for four or five days when she called in Dr. Randolph. After examining her and diagnosing her ailments he gave her two prescriptions, one for medicine to be taken internally, a teaspoonful in hot water at a time, and the other "creolin," an antiseptic, to be used in a gallon of water as a douche.

It is alleged and satisfactorily proven that appellant drug company, after filling the prescriptions and placing the medicine in separate bottles, reversed the directions, placing that for the internal use upon the bottle containing the medicine for the douche. When the two bottles were brought to the bedside of appellee those attending her gave to her two or more doses of the medicine from the bottle containing the douche prescription but labeled for internal use, which burned her mouth and throat and upset and deranged her stomach and digestive system, causing her much pain and suffering and disabling her for some weeks, as she claims.

Appellant relies upon two grounds for reversal of the judgment, and states as follows:

"1. The verdict is excessive and is not supported by the evidence, and was influenced by passion and prejudice.

"2. Where a party introduces a witness to prove certain facts, and the witness fails to testify in the affirmative in regard to such facts, he cannot then introduce other witnesses to prove that the facts attempted to be proven did exist."

(1) The evidence for appellee, Patton, proved beyond question that she was poisoned as a result of the carelessness of the agents and servants of the drug company in putting the wrong lable upon the bottle from which she was administered the poisonous medicine. She very graphically described her pain and suffering from the administration of the douche medicine. The evidence shows that the membranes of her mouth and throat were burned and caused to inflame and that her stomach and other digestive organs were upset by the swallowing of the disinfectant, prescribed by the physician as a douche.

Most of the evidence of the appellant company was introduced in an attempt to prove that "creolin" is an antiseptic but not a poison. Several doctors testified concerning "creolin" and its use, all admitting it to be an antiseptic and that it is poisonous to germs, and stating its use to be almost solely as an antiseptic. Experts agree that "creolin" is poisonous when given in a dose greater than fifteen minims and that whenever it is prescribed at all for internal purposes the dose should not be greater than three (3) to fifteen (15) minims, depending upon the age and condition of the patient. A minim, say lexicographers, is a drop or less of liquid. Many physicians, the evidence shows, never prescribe "creolin" to be taken internally because of its poisonous nature. The testimony shows that appellant, Patton, was administered "creolin" in teaspoonful doses and that it coagulated and roped in her mouth before she could swallow it, burning and causing her much pain in taking and swallowing it as well as afterwards. According to her testimony she was disabled to follow her usual occupation of laundress, or to attend to her household duties for a considerable period of time. The evidence was amply sufficient, we think, to support the verdict. Had appellee been of the white race and occupied a higher station in life the verdict, no doubt, would have been for a much larger sum of money, even though the injuries inflicted were exactly the same, a sad commentary on our civilization and judicature.

(2) Appellee introduced Doctor Randolph, her family physician, who prescribed the "creolin" to be used as a douche, as a witness. He supported her evidence in every way except that he stated the "creolin" was an antiseptic, poisonous in a way but not regarded by physicians generally as belonging to that class of medicines known as poisonous. The attorney for appellee asked the witness, Dr. Randolph, if he had not stated to him shortly after the poisoning of appellee, Patton, that "creolin" was a dangerous poison, and the witness answered that he had not made such statement. He also was asked if he had not made a similar statement to counsel only a short time before the trial, and he again answered in the negative. Later appellee's counsel introduced himself as a witness and testified to what Doctor Randolph said to him concerning the poisonous nature of "creolin." The latter testimony contradicted

that of Doctor Randolph concerning the harmless nature of "creolin." Appellant drug company insists that this evidence was inadmissible. Counsel for appellee insists that he was surprised by the testimony of Doctor Randolph in that it was contrary to the fact as well as to what the doctor had stated to counsel on two previous occasions. It was, therefore, contradictory and prejudicial. The evidence for appellee, Patton, tends to show that Doctor Randolph, after consulting with counsel for appellee, conferred with the president of the drug company and with the company's counsel and thereafter changed his evidence. There is a Civil Code provision, section 596, which provides that a party may contradict the evidence given by his witness. This section reads:

> "The party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him; but he may contradict him by other evidence, *and by showing that he has made statements different from his present testimony.*"

All that was done in this case by appellee, Patton, was to show that the witness Randolph had made statements different from his testimony given on the trial. This was warranted by the section of the Civil Code above copied. The witness led the attorney for appellee to believe he was going to testify that "creolin" was a poisonous medicine, not suitable for internal use, but at the trial, according to the evidence of the attorney for appellee, the witness stated, in substance, it was merely an antiseptic and a nonpoisonous medicine. This was calculated to surprise appellee and her counsel, and we think the trial court did not err in allowing plaintiff to contradict the evidence of Doctor Randolph in the way and manner it was done. While the court did not admonish the jury as to the purpose of that evidence, no motion or suggestion was made by appellant's counsel to this end. We do not think the substantial rights of appellant were prejudiced by this oversight of the court.

Finding no error to the prejudice of the substantial rights of appellant the judgment is affirmed.