## Buck et al. v. Kleinschmidt.

Feb. 3, 1939.

As Modified and Extended on Denial of Rehearing June 23, 1939.

D. B. Caudill, Judge.

James C. Clay for appellants.

W. E. Procter and Wilson & Robinson for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Suit was filed in the Rowan circuit court by appellee, Hazel Kleinschmidt, on January 28, 1935, against W. H. Buck and R. J. Blankenship. In her petition she charged that on December 10, 1934, while she was riding over U. S. Highway 60, in an automobile driven by her husband, toward Morehead from the west, Buck ap-

proaching was operating an automobile belonging to his employer Blankenship, in such a negligent, careless and reckless manner that it was caused to run into the vehicle in which she was riding, with such violent force as to throw her against and on various parts of the automobile. She charged that she was badly bruised and injured on parts of her body; that as a direct and proximate result of the negligence charged, resulting in her injury, she suffered much pain and mental anguish; was permanently injured, and for which she asked damages to the sum of $5,000 plus $50 for medical services and medicine.

Demurrers were interposed by the defendants, and without waiving same they filed answer in which they denied in apt terms the allegations of the petition, and for defense alleged that injury, if any, received by plaintiff was the result of her own negligence, and that of her husband, who was her agent and driving the car at the time of the alleged injury; that but for her own, and his negligence, the injuries would not have been received by her.

Appellee demurred to the answer, and moved to strike paragraph 2, which set up as a defense her and her husband's negligence, the ground being that the alleged contributory negligence of the husband in driving the car in which she was riding, could not be attributed to her. Both demurrer and motion to strike were overruled with exceptions. Appellee then followed with a reply denying the affirmative allegations of the answer, thus closing the issue.

Upon trial the jury returned a verdict in favor of appellee for $500 and judgment was accordingly entered. Motion for new trial was overruled; appeal granted, and bill of exceptions timely presented, approved and filed.

While numerous grounds in support of motion for a new trial were presented, as the case comes before us, appellant is urging the following errors:

1. In the admission of incompetent evidence to impeach plaintiff's own witness.

2. In refusing to permit introduction of competent evidence offered by appellant.

3. In refusing to sustain appellants' motion for peremptory, offered at the close of the case.

4. In giving instructions 1, 2, 3 and 3½ because

misleading, confusing and repetitions of statements of the law, and as to 1, 2 and 3, because not statements of the law.

On December 10, 1934, appellee and her husband had been to her former home at Moore's Ferry; they had an eighteen month old daughter with them. The husband had also been delivering some repaired watches, and taking up others for repair. They were returning home—the husband driving his Ford coupé. It had been snowing and the roads were slick. The car in which appellants were riding had chains on the wheels. The accident happened on the east or Rowan side of the bridge over Licking River, which divides Rowan and Bath counties.

Appellee says that as they approached and went on the bridge, their car was going about twenty-five miles an hour. The accident occurred about 2:30 p. m., and at a time when it was not snowing. As they approached and went on the bridge Mr. Kleinschmidt was driving on the right side of the roadway, and as his car went on the bridge she estimated that the right wheel of the car was about 1½ feet from the 6 x 6 guard rail on the right side, and held this position until the accident occurred.

When the car in which appellee was riding was about the center of the bridge she saw the Buck car enter the bridge, at what she estimated a speed of about 35 miles an hour, and she says:

"As soon as he (Buck) entered the bridge he headed toward us and did not stop until he hit us; his car as he came on the bridge was on the left side of the road."

She thought there was some seven or eight feet clearance for him to have passed to their left. She further said that the Buck car came on without apparent effort to alter its course. She realized that there would be a collision and put the little girl behind her. The remainder of her testimony consists of a description of her injuries and the consequent suffering.

On cross-examination she said her car (and when we say "her" it will refer to the car in which she was riding) did not slide or skid. She testified that the bridge at the Rowan County end is not on a level, but goes down gradually, and as they were going down hill her husband slowed up a little, but could not say that he

put on his brakes. She could not see the Buck car as she entered from the Bath County side.

Mr. Shrout testified that the bridge is 246 feet in length, including approaches. The approach on the Rowan (east) side is 70 feet and has a small incline. Clearance is about 14 feet 4 inches measured between guard rails of 6 x 6 timber. As you approach the bridge, going west, there is a "stiff" curve, though the bridge is straight. The curve continues for some distance from, to the bridge proper. Guard rails or fencing obstruct the view of an automobile going west. This is the best description which we have been able to gather from the proof. It seems that a drawing or plat was exhibited, and many of the witnesses answered material questions by saying, "here" "over there" or "at this point," (indicating) which, in the absence of a marked drawing is not enlightening to this court.

Without going into detail we may say that there was proof introduced for plaintiff which fortified the charge of negligence of the driver of the Buck car, and sufficient to take the case to the jury. This conclusion answers point (3).

Buck, testifying for himself and his codefendant, said he was a deputy sheriff, and with the Sheriff of Rowan County was conveying prisoners from Morehead to Frankfort. He was behind Blankenship, and driving a Ford coupé; he had with him a prisoner seated between him and young Blankenship. He said that as he approached the bridge, on the Rowan side, he saw the Kleinschmidt car approaching the bridge. He admits that he was slightly on the left side of the roadway in coming around the curve, but as he got on the bridge he pulled over to his right side. He saw the other car coming on the bridge, took his foot off the accelerator, and used his brake. He says about this time the driver of the other car applied brakes; his wheels locked and he swerved to Buck's right. At this point Buck tried to cut his car back to the left, and came almost to a stop. The result was that both cars came together, injuries to them showing that the right side of each car had suffered from the impact.

It is unnecessary to go into details by giving evidence on appellant's behalf as to lack of negligence on his part, and alleged negligence on the part of the driver of the Kleinschmidt car. We say this, because on con-

sideration of the case we find that it must be reversed on technical grounds.

We pass to the alleged errors which we shall discuss briefly. It is complained that many of the questions propounded by counsel for appellant to various witnesses were leading, and we find this true to a considerable extent, though we also observe that objections were not timely made, so the irregular method of bringing out evidence was in all, save a few immaterial instances, waived.

A further contention is that appellee undertook to, and did in a measure, impeach her own witness. This arose with regard to the testimony of Mrs. Mays, who lived near the bridge and claims to have been an eye witness. Called by appellee, before the inquiry had gone very far, it was clear that she was laying negligence at the door of appellee. After testifying to such facts as tended to indicate negligence on the part of the driver of the Kleinschmidt car, she was presented with a written statement theretofore made at the instance of appellee's counsel. In this statement (which the court admitted over objection) the picture was entirely different, though witness said she did not remember all that had been said; she made the statement because she was busy and wanted to be rid of the one seeking the statement.

The admission of the contrary statement was not error. Section 596 of the Civil Code of Practice provides that the party offering a witness may not impeach his credit by tendering evidence of bad character, except in certain cases, "but may contradict him * * * by showing that he has made statements different from his present testimony." Model Drug Company v. Patton, 208 Ky. 112, 270 S. W. 998, Lee v. Commonwealth, 203 Ky. 63, 261 S. W. 842, Blackerby v. Commonwealth, 200 Ky. 832, 255 S. W. 824.

Richard Mays, testifying for appellee, was asked if the driver of appellee's car had not stated in the presence of a certain person or persons that Mr. Kleinschmidt had said that he had tried to pass the Buck car on the left side of the bridge, but could not get across. Counsel for appellee objected and his objection was properly sustained. Avowal was made that such a statement was made at Morehead. The question asked did not fix the time of the alleged statement, nor the place.

Without discussing as to wnether it would have been admissible under the res gestæ doctrine, we are of the opinion that it was otherwise objectionable. The driver of the car was the husband of the plaintiff. Under Section 606 of the Civil Code of Practice the husband cannot testify for or against the wife, except in specified instances.

We come now to the complaint of appellant that the instructions given by the court were misleading, erroneous and prejudicial to defendant. That they are, to say the least, confusing there is no doubt.

Instruction No. 1 told the jury that it was Buck's duty to operate his car in a careful manner, with due regard for the safety and convenience of all other vehicles or traffic upon the highway and to travel upon the right side thereof whenever possible, unless the left side of the highway is clear of all other traffic or obstructions, and prevents a clear vision for a distance of 150 feet ahead, and not to operate his car at a greater speed than was reasonable and proper, having regard for the traffic and use of the highway. The jury was further told that if they believed from the evidence that Buck was negligent in that he failed to perform any one of those required duties, and by reason of said negligence, if any there was on his part, he helped to cause or bring about the collision, the law was for plaintiff.

One criticism directed by plaintiff toward this instruction is that the court required appellee to have regard for "the safety and convenience of all other vehicles or traffic" saying that such requirement would place upon him an impossible task. Our answer to this is that insofar as the objection goes, the language used is the same as is employed in Section 2739g-35, Kentucky Statutes, and has been approved in numerous cases.

Upon a close analysis of instruction No. 1 we cannot say that the instruction as given is prejudicially erroneous. It appears to fairly embody the law as we have approved it in many cases. However, the instruction, though not condemned for the reason, might be misleading since it puts too much emphasis on the word "negligence." It would be better to advise the jury upon what ground they should find for plaintiff, in the usual and customary form used in cases of this kind. Rather than say, "if you find and believe from the evidence that said Buck was negligent, in that he failed to

perform any one or more duties required of him in this instruction and by reason of *said negligence,* if any there was upon his part, he helped to cause or bring about the collision &c'' the court should follow the usual form. This may be done by adopting the following or similar language, ''and if the driver of the Buck car failed in the performance of any one or more of said duties, and that by reason of said failure, if any there was, the car of defendant collided with the car in which plaintiff was riding, and thereby plaintiff received the injuries complained of, the law is for the plaintiff and you should so find.''

Complaint of instruction No. 2 is that it dealt with the question of speed at which appellant's car was being driven at the time of the collision, when, as argued, the matter of speed had naught to do with the accident. The same argument is advanced with respect to instruction No. 3, which advised the jury that the law was for plaintiff if Buck failed to give sound warning of his approach to the bridge.

The court in the former instruction told the jury that if they believed from the evidence that Buck was driving his car ''around a sharp curve and faster than twenty miles per hour, and that the speed of said automobile helped to bring about the collision * * *, you will find for plaintiff unless you shall believe from the evidence that, considering the traffic and use of the road at the time and place, the speed of the car, although exceeding twenty miles per hour was reasonable or proper driving; in which event you will be governed by other instructions given.''

Instruction No. 3 advised the jury that if they believed that Buck was at the time and place therein mentioned, approaching a curve or an obstruction to the view of said highway, which prevented a clear view for a distance of 150 feet, it was the duty of Buck to hold and have said automobile under control, and to give warning by horn or otherwise of his approach, and if he failed, &c. the law is for the plaintiff.

As to instruction No. 2, there was no evidence that the Buck car was being driven around a sharp curve. There was some evidence that the car was being driven at a rate slightly greater than twenty miles per hour, Section 2937g-39, Kentucky Statutes, provides that vehicles meeting from opposite directions shall pass each

other to the right, each giving the other one-half of the road as nearly as possible, and neither proceeding, when on a straightaway, unobstructed highway, at a greater rate of speed than thirty miles per hour, or when meeting on a sharp curve at a greater rate of speed than twenty miles per hour. A sharp curve is defined to be one of thirty degrees or more.

Section 2739g-47, Kentucky Statutes, provides:

"Every operator of an automobile * * * when *approaching* a curve or an obstruction to the view on a public highway which prevents a clear view for a distance ahead of one hundred and fifty feet, shall hold such automobile * * * under control, and shall give warning by horn or other sound device of his approach."

It is quite clear from a reading of instructions 2 and 3, the court confused the law with respect to the duties of the driver of the Buck car, as will be seen from a reading of Section 2739g-39, which provides that in rounding a sharp curve, and in meeting another vehicle, the driver must not exceed twenty miles. It is only when approaching any curve, or point in the road when the view is obstructed for a distance of 150 feet, that the driver is required to have his car under control, and give a sound warning.

Under the facts in this case, at the time and place of the accident, neither party was rounding a curve. The accident occurred near the middle of the bridge, which, as shown by the proof, was practically straight. There is little if any proof on the question as to whether or not Buck gave any sound signal of his approach to the curve or place of obstructed view, but we conceive this question to be of little importance.

There was no place in the instruction for advice to the jury as to Buck's duty in attempting to pass a vehicle on a sharp, or any other curve, hence the instruction was erroneous, particularly so in view of the fact that there was some evidence that Buck was driving more than twenty miles per hour, though not exceeding the otherwise permitted speed limit.

However, we need not prolong discussion as to the form or substance of instructions Nos. 2 or 3, since we are clearly of the opinion that neither the speed at which Buck was driving his car, nor his failure to warn by

sound of his approach if there was such, had anything to do with the accident, as we read the proof. In fact appellee's counsel seems to take this view of the cause, since he states in brief, "but in this case it is clearly shown that if the automobile of the appellants had been traveling on the right side of the road the accident would not have happened."

Plaintiff in testifying lays the whole negligence of appellant on the fact that when she first saw the car it was on her side of the road, hence both she and the driver of her car had knowledge of the presence and position of the Buck car some appreciable time prior to the impact. She says her car was on its right side, with a clearance of some seven or eight feet for the Buck car to have passed, had it been on the right side of the road.

There is no evidence at all which tends to show necessity for sounding a horn so as to give the driver of appellee's car warning of its approach. The sounding of the horn would not have changed the position of Buck's car, or permitted appellee's driver to do other than he did under the circumstances. Field v. Collins, 263 Ky. 474, 479, 92 S. W. (2d) 793; Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753. What is said about the instruction as to warning of approach to a curve or obstruction, is equally applicable to the instructions insofar as they related to speed, or excessive speed. Neither was the cause of, or contributed to the accident as·we read the proof. See Gess v. Wilder, 237 Ky. 830, 36 S. W. (2d) 617; Consolidated Coach Corporation v. Bryant, 260 Ky. 452, 86 S. W. (2d) 88, 89.

As we read the evidence, our view is that it was only necessary in this case, as presented by the proof, for the court to have given the instructions on the general duties of the driver of the Buck car, as endeavored in No. 1, and his duties when meeting a car coming from an opposite direction. We cannot say what will be the evidence on a new trial, hence can do no more than suggest what should be the instructions if there be no substantial difference in the proof.

We are of the opinion that the instructions as given, submitted issues which had naught to do with the case, and were confusing and misleading, hence the judgment should be and is reversed for a new trial consistent herewith.