## Grigsby v. Smith (two cases).

Dec. 17, 1940.

George S. Wilson, Jr., and William L. Wilson for appellant.

Cary, Miller & Kirk and Woodward, Dawson & Hobson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeals are from judgments of $10,000 for the death of Alvah Lee Smith, and $500 for personal injury of his son, Harding A. Smith, against S. S. Grigsby, doing business as the Yellow Taxicab Company, the owner of a taxicab in which the Smiths were passengers when the accident occurred. Appellant contends the cases should not have been submitted to the jury because under the evidence it could only speculate that negligence caused the accident. He also assigns error in the instructions.

Essentially, the first ground rests upon proximate cause—whether the automobile collided with the end of the truss of a bridge causing it to collapse, or whether the bridge fell when the car went on it in the ordinary and regular way. The accident occurred about midnight of May 19, 1938, on a return trip to Owensboro from Central City.

The passengers were on the rear seat, and Thornton Ashby, a guest of the driver, James Bradley, was on the

front seat with him. Along the way, according to Harding A. Smith, the automobile ran from 50 to 60 miles an hour, and at one time his father said to the driver, "Slow down, we want to get there in one piece," and he replied, "I will get you there in one piece." The car continued at a rapid rate. At the village of Pettit there is what is described by all the witnesses as a sharp curve in the road to the left, just before reaching the bridge over Panther Creek. The bridge was 14 feet wide and 135 feet long, with a steel superstructure. Harding A. Smith was relaxed listening to the radio in the car. He says they passed through Pettit going around 40 or 50 miles an hour, as he judged, and as the car started into the curve, within 10 or 20 yards of the bridge entrance, some one in the car called, "Look out for the bridge," and for the driver to slow down. The brakes were applied and the car was skidding when he raised up and saw the side of the bridge as the car struck it with "a terrible jar." He was knocked unconscious. W. M. Ashby lived close by. He heard the automobile "coming and roaring and in a second heard the brakes crying and then the crash," jumped out of bed, and went to the scene. The bridge had collapsed. The tracks of the car showed it had struck the "right-hand corner of the bridge." There was yellow paint from the automobile on the broken arch of the bridge. Mrs. Ellis Bartlett lived in the house nearest the bridge with her bedroom window facing it. She was sick that night, sitting on the side of her bed, and a car came around the bend so fast that it attracted her attention. She looked out the window, heard a crash, "and the light went up and it looked like it climbed the bridge and when it came down this big crash came," the bridge itself falling.

The bridge rested on stone abutments with the north end anchored and the south end (where the accident occurred) on rollers to take care of the expansion and contraction. The batter post of the bridge truss is the incline of the major cord or beam extending from the base to the top lateral. The south batter post, which was on the right-hand side as this car entered the bridge, was broken in two. There was yellow paint rubbed off on the bridge. The entire bridge collapsed with the middle down in the creek and each end of the floor inclined up to or toward the road level. The right

side of the taxicab beginning about the front door was crushed in. The car had turned completely around, with the front headed south, when it came to rest on the bridge near the entrance. A part of the broken batter post lay across the top, but had only dented it. There were skid marks on the road, apparently made by this car, extending back 140 feet from the bridge entrance. Those tracks indicated that the car was going somewhat sideways for 20 or 30 feet up to the batter post of the bridge.

Engineers described the structure and testified that the breaking of a vital part of the truss would cause the bridge to collapse. They expressed the opinion that a Ford automobile, driven even at 20 or 25 miles an hour, would develop sufficient force to cause the collapse of the bridge by striking a side blow on the batter post at the free end, since each member of the truss carried part of the load and when one was distorted the effect threw the load on a weaker point and caused the truss to fail. Engineers of the State Highway Department testified that the bridge, although built back in the "horse and buggy days," was structurally sound and in good condition. The breaks in the steel were fresh and indicated no defect in the metal.

Immediately after the accident, the dead body of Alvah Lee Smith was on the floor of the bridge, at the rear, a little to the side of the automobile. Harding A. Smith was found in a sitting posture near by. His right arm was badly crushed and he was otherwise injured. Bradley and Ashby were outside the car and unconscious but their location is not definitely shown.

Bradley testified that he had not been driving the taxicab at an excessive speed and had slowed down to between 20 and 35 miles and hour going through Pettit. Anticipating the bridge, he reduced the speed to 15 or 20 miles an hour, was driving carefully and had no trouble in making the curve. His car was pointing straight through the center of the bridge. Said he, "All I know is I was driving down through there and I drove on this bridge and there was a crash and that is all I remember." He insisted he did not skid or lock his wheels or in any way cause the car to do anything out of the ordinary, and that the bridge collapsed just as he drove on it. His companion, Ashby, corroborated him, saying

that the falling of the bridge caused the car to careen and the bridge to sideswipe the car. A short distance up the road he had called Bradley's attention to the curve and the bridge, and he slowed down "some." Witnesses, who were in an automobile approaching the bridge from the other side, related that they had stopped to wait for the taxicab to come through. It was traveling fast when it came around the buildings in the village just before it got to the bridge. As it entered the lights were in the face of the witnesses and blinded them to some extent. They heard the brakes of the car. One of them testified that the bridge fell about the time the car came on it, but added, "It fell after the accident happened." He did not see a sudden jerk of the car throwing the lights up in the air. Other witnesses who arrived on the scene afterward did not shed much light on the cause of the accident.

The defendant introduced a piece of bolt picked up under the bridge which apparently came out of it. Experts testified that this showed a crystallization with resulting weakness of the metal. They went fully into the science of metals and bridge construction, explaining that continued pounding and use causes crystallization, and stated it was possible that the metal failed, causing the bridge to collapse just at the moment this car drove on it. The defendant also proved that the bridge had been built in 1903 and had been under water in 1937. A much heavier floor had added to the weight of the structure.

On the other side, it was shown that the bridge was rebuilt in 1913; that there had been regular inspections by engineers of the Highway Department, which showed that the bridge was in good condition and strong enough for the traffic. Traction engines and other heavy vehicles had been using the bridge without apparent danger.

Perhaps we have elaborated the plaintiff's evidence more than the defendant's. It is because the decision rests on its sufficiency to take the case to the jury or to sustain the verdict. It seems to us that the evidence afforded reasonable and not merely speculative grounds for the jury to believe that the defendant's driver was negligent in striking the bridge superstructure and that such negligence was the cause of the accident. The jury was justified in concluding that the taxicab came around the curve so fast that it swung out

and collided with the truss of the bridge and that such collision caused the death of one of the passengers and the injury of the other. Whether the collapse of the bridge was a sequence or a coincidence is another matter. The jury might have found, as appellant maintains, it should have found, that the taxicab running on the bridge was but "the straw that broke the camel's back," and that this was the proximate cause of the accident. If we balance the verbal testimony as to what occurred immediately before the accident, still it is difficult to arrive at that conclusion from the physical facts. The collapse of the bridge could not have turned the car end for end, and as the broken beam was on top of the automobile it could not have injured the occupants.

After advising the jury that it was the duty of the driver to exercise the highest degree of care to carry his passengers to their destination, there was added also the duty "to have said taxicab under reasonable control and to operate it at a reasonable speed, and in approaching the bridge around the curve described to you in evidence not to exceed 20 miles per hour," etc. The instruction then predicated the right of plaintiffs to recover damages upon the belief by the jury that the driver had "failed in the performance of any one or more of said duties and that as a direct and proximate result of such failure, if any, the taxicab of the defendant collided with or struck the supporting structure of the bridge," and that death and injury resulted by reason thereof.

Appellant calls attention to the provision of Section 2739g-51 of the Statutes (as it existed at the time of this accident), declaring a rate of speed of 20 miles an hour "around any sharp curve," to be prima facie evidence of unreasonable and improper driving, and to Section 2739g-1, Subsection (h), which is as follows:

"Whenever and wherever the words 'sharp curve' are used herein, they shall mean a curve of not less than thirty degrees; and whenever and wherever the words 'steep grade' are used herein they shall mean a grade of exceeding seven percent."

It is the appellant's contention that the part of the instruction quoted relating to speed around a curve was not authorized because the accident did not occur on or near any "sharp curve" as defined by the statute. The witnesses referred to the situation as a "pretty sharp

curve," or "right smart curve," or "sharp curve," or a "corner," but none of them undertook to state or define the degree of curvature. Appellant relies on Mc-Culloch's Adm'r v. Abell's Adm'r, 272 Ky. 756, 115 S. W. (2d) 386, and Buck v. Kleinschmidt, 279 Ky. 569, 131 S. W. (2d) 714. We do not think those cases are applicable to the present facts. But it is not necessary to pass upon the point made in the argument as it seems to us that the giving of the criticized portion of the instruction was to the defendant's advantage rather than to his prejudice, for he was liable if his driver ran into the structure as a matter of fact, regardless of the violation of any statutory duty. Unlike the cases relied on, the relation of common carrier and passenger existed here, with the consequent responsibility of the defendant, through its employee, to exercise the highest degree of care for the safety of his passengers as was consistent with the practical operation of the taxicab. Shelton Taxicab Company v. Bowling, 244 Ky. 817, 51 S. W. (2d) 468.

Violation of the rules of the road affords evidence of negligence; but the duty of a common carrier by motorcar is not met as a matter of law by a mere observance of those rules; nor is its negligence to be judged by a mere failure to observe them. Washington v. Seattle, 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113; Singer v. Martin, 96 Wash. 231, 164 P. 1105. If the taxicab collided with the bridge without the driver having violated any specific statutory duty applicable to the operation of automobiles, there would have been liability just the same. The instruction only submitted the proposition of the failure to observe the specific duty as proximately causing the car to collide with the bridge— not as proximately causing the death and injury of the passengers. The jury could not have found for the plaintiff unless they believed the taxicab struck the bridge and that the striking of the bridge was the proximate cause of the accident and the death and personal injury. This was the sole predicate upon which the plaintiffs could have recovered. The very fact that the car ran into or against the bridge structure, as plaintiff's evidence showed, itself proclaimed negligence. Anthony v. Public Transit Company, 130 A. 895, 3 N. J. Misc. 1204. There was no possible contributing or superinducing cause, such as a collision with another automobile, or an unavoidable condition. The res ipsa loqui-

tur rule applied, for the operation of the car was under the sole control and management of the carrier's agent. The case is similar to those where a passenger motorbus, without explanation, ran off the side of the highway. Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. (2d) 768; Consolidated Coach Corporation v. Earls' Adm'r, 263 Ky. 814, 94 S. W. (2d) 6; Annotations, 5 A. L. R. 1240; 12 A. L. R. 668; 45 A. L. R. 306; 69 A. L. R. 988; 96 A. L. R. 765; 9 Blashfield, Cyc. of Automobile Law and Practice, Permanent Edition. Had the case been submitted under that rule the defendant would not have had the benefit of any of the more favorable instruction that was given.

The rights of the defendant were taken care of in another instruction which provided that if the jury believed from the evidence that the taxicab was driven onto the bridge in a careful and reasonable manner and at a careful and reasonable rate of speed, and with the highest degree of care which prudent persons engaged in like business usually exercised to carry passengers safely to their destination, and without having touched any of its supporting members, or any part except the floor, the bridge suddenly collapsed and the injury and death were caused or brought about solely by the collapse of the bridge, the verdict should have been for the defendant. Another instruction also submitted the defense in a more specific form.

We find no error prejudicial to the substantial rights of the appellant; hence the judgments are affirmed.