## Brumleve et al. v. Gordon et al.

February 15, 1949.

As Extended on Denial of Rehearing May 27, 1949.

A. E. Funk, Attorney General, Gardner Ashcraft, Assistant Attorney General, R. P. Moloney, Donald P. Moloney, R. Vincent Goodlett and Louis Cox for appellants.

A. E. Funk, Jr. and Edward F. Prichard, Jr. for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Reversing.

This is a class action brought by Fred Gordon, doing business as Gordon Taxicab Company, for himself and as the representative of some 1,200 taxicab operators similarly situated and licensed by the State of Kentucky, against Ben J. Brumleve, Director of the Division of Motor Transportation, the Commissioner of Revenue, members of the Tax Commission, the Finance Commissioner and the Treasurer of the Commonwealth. Plaintiff seeks to recover a permit fee of $10 paid by each taxicab operator securing a permit on Sept. 1, 1945, and a fee in the same amount paid upon the renewal of the

permit each year beginning Jan. 1, 1946. The petition avers that the Director of the Division of Motor Transportation, hereinafter referred to as the Director, illegally and arbitrarily imposed this $10 fee without authority of statute, and that the total amount of the fees so paid and sought to be recovered aggregate some $30,-000, with interest from the dates of payment.

Special and general demurrers filed by the defendants were overruled. They refused to plead further and the court gave judgment directing that the fees so collected by the Director be paid by the State Treasurer to the Clerk of the Franklin Circuit Court, who shall distribute them to the persons paying same as shown by an itemized list to be furnished by the Director.

The sole question presented on this appeal is whether or not the Director had authority under KRS Chapter 281 to impose this $10 fee on the issual and renewal of permits to operate taxicabs in this State.

It is apparent that a determination of the question requires an examination of the various sections in KRS Chapter 281 which relate to the licensing of motor carriers in the Commonwealth. All italics appearing in the statutes quoted in this opinion are ours. The first section of KRS 281.010 deals with the definitions of terms as used therein; and subsections (3), (4) and (11) thereof, which apply to this case, read:

"(3) 'Common carrier' means any operator of a motor vehicle for hire in common carriage other than the operator of a taxicab or city bus, except that the operator of a city bus who obtains a certificate under subsection (2) of KRS 281.040 shall thereupon become a common carrier as to that portion of its operation covered by such certificate.

"(4) 'Contract carrier' means any person who, under individual contracts or agreements, engages in the transportation (other than as a common carrier) by motor vehicle of passengers or property for hire.

"(11) 'Taxicab' means any motor vehicle designed or constructed to accommodate or transport passengers, *not more than six in number exclusive of the driver,* the principal operation of which is confined to the corporate limits and suburban areas of cities of this state,

and not operating over any definite route, and the destination of which is designated by the passenger or passengers at the time of such transportation.''

It will be noted that the definition of a common carrier in subsection (3) of KRS 281.010, expressly excludes taxicabs, while subsection (4) in defining a contract carrier does not exclude taxicabs. Furthermore, KRS 281.-210 under the general heading of Contract Carriers; Permits, Rates and Services reads: ''(1) Applications for permits shall be made to the division in the manner and form provided for in the regulations of the division. Each application for a permit to operate a motor vehicle for hire designed primarily for the transportation ''of persons and *having a seating capacity of seven persons or less* shall be accompanied by a fee of ten dollars. Every other application for a permit shall be accompanied by a fee of twenty dollars.''

Attention is called to the fact that the words we have italicized in this statute are practically the same as those defining a taxicab in KRS 281.010(11) which we have italicized there.

Under the general heading Taxicabs and City Busses KRS 281.450 reads in part: *''Taxicabs and city busses must obtain permit; list of drivers to be filed.*

''No person shall transport passengers for hire on any public highway who is not qualified so to do under KRS 281.040 or 281.200, without having procured from the Division of Motor Transportation an authorization for such operation. * * * Authorizations shall be renewed at such times, in such manner and upon such conditions as the division prescribes.''

Thus it is seen that KRS 281.210 relating to contract carriers requires application to be made for a permit, and that 281.450 relating to taxicabs likewise requires application to be made for a permit, albeit in the body of the latter statute the word ''authorization'' is substituted for the word ''permit.'' Section 2739L-10 in Carroll's Statutes is brought forward as sec. 281.450 in the Revised Statutes. But in compiling the Revised Statutes, the reviser changed the word ''permit'' appearing in KS sec. 2739L-10 to the word ''authorization'' in the body of KRS 281.450, although in the heading of the revised section he left the word ''permit.''

Since subsection (3) of KRS 281.010 excludes a taxicab from the classification of a common carrier within the provisions of Chapter 281, while subsection (4) of 281.010 does not so exclude a taxicab from the classification of a contract carrier, and as the definition of a taxicab given in subsection (11) of 281.010 (which requires a $10 fee to accompany the application for a permit, 281.210), and as 281.450 requires the operator of a taxicab to apply for a permit or authorization, it seems logical to us to conclude that the General Assembly in enacting these various sections intended to, and did, class a taxicab as a contract carrier and required each application for a permit to operate a taxicab, and each renewal thereof, to be accompanied by a fee of $10.

We have seen that under KRS 281.010(4) "Contract carrier" means anyone (other than a common carrier) who engages in transportation by motor vehicle of passengers or property for hire under individual contracts or agreements. This is inclusive and excepts only those engaged in transportation as a common carrier. Further light may be had on whom the Legislature intended to classify as contract carriers by reference to KRS 281.520. This section provides for mileage, tag and seat taxes on passenger vehicles operated by every common carrier and every contract carrier, except as provided in subsection 2 thereof. This subsection expressly excepts taxicabs, city busses and U-Drive-Its and vehicles operating under a certificate in interstate commerce from the payment of the mileage and tag taxes. It will be noted that subsection 1 imposed these taxes upon every common carrier and every contract carrier except those named in subsection 2, which is clearly indicative that taxicabs are either common carriers or contract carriers. Since taxicabs are expressly excepted from the definition of common carriers, there remains only one classification into which a taxicab may fall, namely, a contract carrier.

We are fortified in this conclusion by the fact that the 1942 General Assembly in passing House Bill 271, c. 208, to revise the Statutes included therein a Chapter 281 entitled "Motor Carriers." The first section of this Chapter, 281.010, contained definitions similar to those in the present KRS 281.010, but the definition of "con-

tract carrier" specifically excluded taxicabs and city busses. It reads: " 'Contract carrier' means any operator of a motor vehicle for hire other than a common carrier, and other than the operator of a taxicab or city bus." By Chapter 185 of the Acts of 1942 the Motor Carrier Law as set forth in the bill to revise the Statutes was repealed and a new Motor Carrier Law was enacted, the first paragraph of which reads: "Chapter 281 of the Kentucky Revised Statutes is repealed and, in lieu thereof, there is enacted the following, to read and be numbered as follows:" Acts of 1942, p. 827. The last section of this Act reads: "This Act shall take effect as of the effective date of the Kentucky Revised Statute." Acts of 1942, p. 865.

Thus, when Chapter 185 of the Acts of 1942 changed the definition of contract carrier by taking therefrom the words which excluded taxicabs and city busses from being classified as contract carriers, it is plain it was the legislative intent that taxicabs and city busses should, for the purpose of classification and regulation, fall in the category of contract carriers.

Plaintiffs, as appellees, call our attention to the fact that in such cases as Shelton Taxi Co. v. Bowling, 244 Ky. 817, 51 S. W. 2d 468 and Grigsby v. Smith, 285 Ky. 48, 146 S. W. 2d 719, we have held a taxicab to be a common carrier, and they argue that a taxicab cannot also be a contract carrier. It is true that in the cases cited we held a taxicab possessed the same liability in tort actions which the law imposes on a common carrier. But those opinions do not concern the classification and licensing of motor vehicles with which KRS Chapter 281 deals, and they do not affect Chapter 281 which says that for the purpose of licensing and regulating such vehicles by the Division of Motor Transportation the term "common carrier" shall not include a taxicab. The contrary is likewise true. The fact that the General Assembly classified a taxicab as a contract carrier for the purpose of licensing and regulating it does not prevent the courts from holding taxicabs are subject to the same liability as a common carrier in tort actions.

It is urged by the plaintiffs, as appellees, that the statutes relating to taxicabs requiring them to obtain permits have been in force since 1932 and that as con-

strued by the Director from 1932 to 1945 no fee was required of taxicab operators in obtaining permits; and under the doctrine of contemporaneous construction, as interpreted in Com. v. Gregory, 121 Ky. 256, 89 S. W. 168, no such fee should now be required without the most cogent reasons.

It is true what is now KRS 281.210, requiring a $10 fee to accompany the application for a permit for a contract carrier of the capacity of not exceeding seven passengers, was enacted by the 1932 General Assembly. But KRS 281.010 defining a taxicab and excluding it from the category of a common carrier, but not from that of a contract carrier, was not enacted until the 1942 session. Chapter 185, p. 827, Acts of 1942. Therefore, there is serious doubt if the fee prescribed by KRS 281.-210, formerly KS sec. 2739j-69, could have been imposed upon taxicab operators securing permits before 1942. It takes some time for the head of a department to digest an act as comprehensive as Chapter 185 of the 1942 session, and due to the fact that there were at least two changes in the office of Director of Motor Transportation from the passage of the 1942 Act until the decision of the Director in September 1945 to make this fee apply to taxicab operators, there is no force in appellees' argument that under the doctrine of contemporaneous construction this fee should not now be collected.

Furthermore, there is no averment in the petition that it had been the custom not to collect his $10 fee until September 1945, nor is there any averment or stipulation that for a long number of years the law regulating motor vehicles and the license and taxes paid by them had been so construed by the operators of taxicabs or the Director that the operators of such cabs were exempt from the payment of this permit fee. The question of contemporaneous construction is raised for the first time in appellees' brief. It appears to us that rather than a contemporaneous construction having existed that taxicabs were not subject to this permit fee, the question was merely overlooked by the Director and has never been raised until this action was filed. Hence, there is no place here to apply the doctrine of contemporaneous construction. Burbank v. Sinclair Prairie Oil Co., 304 Ky. 833, 202 S. W. 2d 420, 421.

Plaintiffs argue that Adams v. Burke, 308 Ky. 722, 215 S. W. 2d 531, is controlling here. But we do not see that it has any application to the question now before us. The Adams case deals with the right of a city to regulate the number of taxicab operators which it may license and has no bearing on whether or not the Director may require the payment of this permit fee to the State.

For the reasons given it is seen that the trial judge erred in overruling a general demurrer to the petition. The judgment is reversed with directions that the demurrer to the petition be sustained.