Lee W. KIRTLEY and Hammon Baking
Company, Plaintiffs-Respondents,

v.

Joseph Nicholas IREY, Defendant-Appellant.

No. 49929.

Supreme Court of Missouri,

Division No. 2.

Jan. 13, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Feb. 10, 1964.

Keyes, Bushman & Hearne, John L. Hearne, Jefferson City, for appellant.

Charles H. Howard, Jefferson City, and Wesner, Wesner & Meyer, Robert L. Wesner, Sedalia, for respondents.

BARRETT, Commissioner.

On September 16, 1958, Lee W. Kirtley, sales manager of Hammon Baking Company, was driving a 1957 Ford station wagon when it was involved in a collision with a 1950 Chevrolet automobile driven by

Joseph N. Irey. Kirtley was en route to Latham from California on Route E traveling south on the blacktop highway, and Irey and his wife, who lived near Latham were traveling north on their way to Tipton and the centennial celebration of the Butterfield Overland Mail. Kirtley and Hammon Baking Company instituted this action against Irey to recover $35,000 damages for his personal injuries and $900 for injury to the station wagon. When the case was first tried on the petition of the plaintiffs and Irey's counterclaim a jury returned a verdict for damages in favor of both parties on their respectively submitted claims, whereupon the court declared a mistrial. Upon this trial of the plaintiffs' claims, without Irey's counterclaim, a jury returned a verdict in favor of the defendant. The plaintiffs' motion for a new trial was sustained on the ground that "the court committed prejudicial error by giving, submitting and reading to the jury Instruction No. 8." The defendant has appealed and contends that instruction 8 was not prejudicially erroneous and in any event that plaintiffs are now precluded from maintaining this action.

As a matter of fact the vehicles collided just south of a one-way bridge over the Moreau River. It is in a valley and motorists approaching "out of the hills" from both north and south have a clear view of the bridge and of approaching traffic. The bridge is 110 feet 7 inches long and at both approaches there is an earthen ramp. Kirtley says, incidentally, that as he entered the valley at a speed of 35 miles an hour he saw another vehicle, Irey's beyond the "flats" traveling north, "looked like it was far enough away that I didn't (sic) have any trouble getting by the bridge." As he drove up the ramp he reduced the speed of the station wagon to 20 or 25 miles an hour and again saw the top of Irey's automobile "on the far side and at that time it looked like it pulled over to let me go by and then all of a sudden he stepped on the gas and came right out and there was just no place for me to go." Two-thirds or three-fourths

of the way he "hit" his brakes but even at a reduced speed of 10 to 15 miles an hour the station wagon collided with the automobile eleven feet south of the bridge and at a point where the blacktop highway was also "definitely one-way."

There is virtually no conflict or dispute as to these facts, the entire controversy, as far as instruction 8 is concerned, hinges around the fact, admitted by all, that there is one point at both ends of the bridge as vehicles ascend the ramps and approach the bridge that automobiles from the opposite directions cannot be seen. And it is upon this single fact that Irey relies and bases his hypothesis of Kirtley's contributory negligence. In essence he contends that by reason of this one point from which vehicles traveling in opposite directions cannot be seen, Kirtley was under a duty to sound his horn and thus signal that he was proceeding across the bridge and failing to do so was guilty of contributory negligence. Since this is the crux of the case it is not necessary to consider the general rules relating to the duty to timely signal. And for the purposes of this opinion it is assumed that instruction 8 is correct abstractly. The precise problem is whether under any view of the evidence favorable to Irey and the jury's verdict there is an evidentiary basis for the instruction because if there is no testimonial support for a verdict-directing submission, here contributory negligence, the instruction is confusing and misleading and therefore prejudicially erroneous. Huger v. Doerr, (Mo.App.) 170 S.W.2d 689.

The Ireys had lived in the Latham neighborhood for over 30 years and "Nick" Irey was quite familiar with the road and the bridge. As he "dropped down the hill" into the "first flat" at a speed of 20 to 25 miles an hour he came to a "one-lane bridge" sign. That road sign was 101 paces, around 300 feet, south of the next marker, a "load limit seven tons" sign, and Irey said that the latter sign was 37 paces, approximately 93 feet, from the end of the bridge. Thus the distance from the end of the bridge to the "one lane" sign was about 393 feet.

Irey says that he did not see a motor vehicle approaching from the north, the other side of the bridge over 500 feet away, although he and Mrs. Irey were talking as they rode across the valley, and he said, "Oh, I don't know as she said be careful. She is always saying something like that." But he said, "Well, I rolled on up towards the next bridge sign, up to where the load sign was, by that time I seen this car coming, just the top of it, on the other side of the bridge. Well I applied my brakes and when I applied my brakes the back end of my car swerved around, I let off of them, straightened up and this car was still coming and I slapped on my brakes, I froze." His Chevrolet "slid" and that was the last he remembered except that his automobile was stopped when the vehicles collided. He had said, however, that Kirtley's station wagon was "three or four (car) lengths on the other side of the bridge" when he "caught the glimpse of the top of the car." He was unable to accurately estimate the speed of Kirtley's vehicle but said, "It was coming pretty fast the way it looked to me, that is why I was braking as hard as I was." He was certain that Kirtley was traveling "quite a little faster than I was" because "it came clear on across that bridge and up the fill and across the bridge and got me on the other side and I never was on the bridge." A neighbor, 76, who lived north of the Moreau Bridge "a little over a quarter" (who had not driven a "machine" for the past 12 or 14 years and before that said, "I just drove a little, let the boys do the driving, I owned the car but they done the driving") remembered seeing Kirtley's station wagon "pass like a streak of fire," said "He was going 65 or 75. If I was going to register it I would register it higher than that." Irey testified that when he was just south of the bridge he could not see the station wagon and he said that he did not hear "a horn sound at any time."

■ In these circumstances and before reaching the ultimate problem these collaterally relevant factors should be noted: Kirtley was traveling "quite a little faster" and reached or approached the bridge ahead of Irey. And while there may be no "right or wrong side" to a one-way bridge, Kirtley having reached the bridge ahead of Irey, no other factors intervening, had the superior right to proceed. Annotation 47 A.L.R.2d 142, 167; 7 Am.Jur.2d, Automobiles, Sec. 205, p. 756; 8 Am.Jur.2d, Automobiles, Sec. 759, p. 316; 2 Blashfield, Cyclopedia of Automobile Law, Sec. 904, p. 75. Aside from these factors the parties have cited several cases relating to the purpose of signals and the duty to signal although, according to the appellant, they "have found no cases involving a raised one-lane bridge that obstructs visibility." But it is not necessary here to review the general rules, it is sufficient to say that there is no fixed, inflexible rule as to signals, the duties are reciprocal, and the duty and efficacy of signals depends on the circumstances. Miller v. Wilson, (Mo.App.) 288 S.W. 997; Gillis v. Singer, (Mo.App.) 86 S.W.2d 352; Greer v. St. Louis Public Service Co., (Mo.App.) 87 S.W.2d 240; McKinney v. Bissel, (Mo.App.) 263 S.W. 533.

■ In general, as to the negligence of a motorist leaving a narrow bridge, the inquiry has usually turned on speed or whether he was on the wrong side of the road. As to motorists approaching a bridge the inquiry has usually been whether they "should have controlled their vehicles so as to give a clear passage to the other vehicle which had preempted the passageway." 47 A.L.R.2d 1, c. 151, 154. It may be that there is no precisely similar set of circumstances but except for the fact that on the approaches to the bridge there was one point at which vehicles from the opposite direction could not be seen Bach v. Ludwig, (Mo.App) 109 S.W.2d 724, has many points of similarity and an applicable lesson. There the collision was at night as the vehicles approached a narrow culvert. In holding that there was no evidentiary basis for the guest plaintiff's instruction submitting that defendants "failed to sound any horn, signal or warning of each other's

approach or intention to cross a bridge or culvert too narrow for both to cross at once," the court had this to say:

"The evidence shows without dispute that each defendant saw the other's headlights a considerable distance away from the bridge as they approached it. Therefore, the failure to give warning could not have been the proximate cause of plaintiff's injury. A warning sounded by each would not have made them any more aware of each other's presence and movements in approaching the culvert than they were by seeing each other as they approached it. In view of such evidence, it is clear that the failure to give warning had no causal connection with plaintiff's injuries, and it was error for the court to authorize the jury to find against defendants on that ground."

There are occasions when an occupant or operator of a motor vehicle may see another vehicle approaching but is nevertheless entitled to a warning; as in the case of a passenger in a taxicab injured when a bus failed to signal and struck a partially opened door, or in an instance when a signal might warn that a speeding automobile would proceed. Martin v. St. Louis Public Service Co., (Mo.App.), 368 S.W.2d 498; Steigleder v. Lonsdale (Mo.App.) 253 S.W. 487. It is not necessary here to further distinguish cases or to carefully spell out all the distances and analyze. When Irey, traveling at 20 to 25 miles an hour, was approximately 93 feet from the bridge, with which he was indeed most familiar, he saw Kirtley's station wagon three or four lengths beyond the bridge (93 feet, plus the length of the bridge 110 feet 7 inches, plus three car lengths) approaching at a "faster speed" than his own speed. In these circumstances it is not apparent just what additional information and knowledge, after the station wagon reached the one point in the highway that approaching vehicles could not be seen, a signal from Kirtley's horn would then convey. All the circumstances considered, there was no evidentiary basis for instruction 8 and for that reason the court properly granted a new trial. In addition to the force of Bach v. Ludwig, other persuasive cases are Feeherty v. Sullivan, (Mo.App.) 129 S.W.2d 926; Adair v. Cloud, (Mo.) 354 S.W.2d 866 and Buck v. Kleinschmidt, 279 Ky. 569, 131 S.W.2d 714.

■ The second problem, whether the court erred in overruling the defendant's motion for judgment on the pleadings and finally in striking a part of the defendant's answer arose in these briefly noted circumstances. As stated, the plaintiffs Kirtley and Hammon Baking Company instituted this action against Irey to recover damages for personal injury to Kirtley and for injury to the bakery truck. Almost immediately the defendant Irey filed an answer and a counterclaim. The counterclaim has not been set forth in this record but it was certainly to recover damages for Irey's personal injuries and perhaps for any loss he may have sustained by reason of his wife's injuries. In any event, with the issues in this posture, a jury returned a verdict in favor of the plaintiffs for their losses and also a verdict for the defendant on his counterclaim. Because of the inconsistent verdict, no doubt, the trial court declared a mistrial with the result that the issues between the parties were restored to their former status. The public liability insurer of Hammon Baking Company and of course of its driver-manager, Kirtley, was the Auto Owners Mutual Insurance Company. Auto Owners also insured Hammon Baking Company's liability under the workmen's compensation law. Plaintiffs' counsel in their action for damages also filed a claim for compensation benefits against Kirtley's employer, the baking company, and in addition represented Auto Owners in defense of Irey's counterclaim. Ultimately, Auto Owners, using other counsel, made a lump sum settlement of Kirtley's compensation claim which together with medical benefits totaled $5,085.84. And as of course, by reason of the compensation law, Auto Owners, to the extent of its payments on behalf of the bakery, became sub-

rogated to any claim for negligent injury Kirtley had against Irey. V.A.M.S. § 287.-150; Everard v. Woman's Home Companion Reading Club, 234 Mo.App. 760, 122 S. W.2d 51; Pritt v. Terminal R. R. Ass'n., (Mo.) 251 S.W.2d 622, and see Annotations 106 A.L.R. 1040, 142 A.L.R. 170.

In this action plaintiffs' counsel continue to represent Auto Owners in so far as its claim for subrogation is involved. Before this action was tried the second time, resulting in a jury verdict in favor of Irey, Auto Owners Mutual Insurance Company in its capacity as Hammon's and Kirtley's liability insurer and under the terms of its policy, but as to this phase of the case again employing other counsel and the defendant Irey represented by personal counsel other than the lawyers provided by his liability insurance carrier, settled Irey's counterclaim and Mrs. Irey's own claim for personal injuries for a total payment of $2,000. Mr. and Mrs. Irey executed a release and their personal lawyer and the lawyers representing Auto Owners entered into a stipulation dismissing the counterclaim with prejudice. In this connection there was a judgment entry of dismissal signed by the judge and that entry was prepared by plaintiffs' personal counsel and Auto Owners counsel in the prosecution of its subrogation claim.

As stated, the facts relating to this problem have been abbreviated, but these circumstances were the basis, prior to this the second trial, of defendant's motion for judgment on the pleadings and of its stricken answer. In summary it is the appellant's position that "(b)y taking a general release from the defendant and entering into the compromise and settlement of the defendant's counterclaim, and the stipulation for prejudicial dismissal thereof, the attorneys for plaintiffs' insurer estopped and barred the plaintiffs from the further prosecution of this suit." The difficulty with this contention is that, despite the complicated and ambiguous representation by counsel and the unusual if not conflicting position of Auto Owners Mutual Insurance Company, it stands uncontradicted by

Kirtley's counsel (neither Kirtley nor Hammon's officers testified on this issue) that Kirtley was not a party to and had no personal knowledge of the settlement of Irey's counterclaim. In this situation and state of the record the only knowledge Kirtley could have would be such as would necessarily be imputed to him by reason of his counsel's knowledge and conduct. But, as indicated, as to the settlement of the counterclaim that too was handled by Auto Owners other counsel. Plaintiffs' counsel testified, except for preparing the entry of dismissal after the event of the settlement, that he felt "there was a conflict at that point of time" and "we would withdraw without any fee to us." He said that he was not consulted and did not take part in the settlement of the counterclaim.

■■ By reason of the manner in which this matter has been handled there may be some complications, rights or obligations as between plaintiffs and their dual capacity insurer and its multiple representation. The plaintiff Kirtley knew, as a matter of law, when he made a lump sum settlement of his compensation claim that pro tanto his employer's insurer was subrogated in that amount to any right of recovery he may have had against a negligent third party, but that fact and that relationship does not carry with it knowledge on his part that this same insurer would settle the defendant's counterclaim and at the same time in the same litigation seek to recover the amount of the subrogation claim from the defendant Irey. In so far as the appellant's claim of estoppel is concerned the case does not fall within the rule that the *immediate parties* to a compromise and settlement and a stipulation of dismissal of a claim or counterclaim with prejudice are "estopped to proceed further with their counterclaim." England v. Yellow Transit Co., 240 Mo.App. 968, 225 S.W.2d 366, 369; Max v. Spaeth, (Mo.) 349 S.W.2d 1; Eberting v. Skinner, (Mo.App.) 364 S.W.2d 829; Farmer v. Arnold, (Mo.) 371 S.W.2d 265. The circumstances as they now appear upon this record do not fall within the proscrip-

tions suggested or implied in Faught v. Washam, (Mo.) 329 S.W.2d 588, 594–595; O'Hanlon Reports, Inc. v. Needles, (Mo. App.) 360 S.W.2d 382, and other cases and texts. In short, the circumstances of this record are governed by the rule that "a liability insurer's settlement of a claim against the insured, made without the insured's consent or against his protests of nonliability, and not thereafter ratified by him, will not ordinarily bar an action by the insured against the person receiving the settlement, on a claim arising out of the same state of facts." Annotation 32 A.L.R. 2d 937, 938; Burnham v. Williams, 198 Mo. App. 18, 194 S.W. 751.

Therefore the judgment is affirmed and the cause remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.